QUIN BOHANAN, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law:** PLEA IN ABATEMENT. A plea in abatement may be signed by the prisoner's attorney. If so signed, and verified by the prisoner, it is sufficient.

2. ———: ———. If the plea contain a material averment on which issue is joined, it is error for the court to refuse the prisoner a trial of it.

3. ———: NEW TRIAL. The ruling of the court on a plea in abatement is not ground for a motion for a new trial.

4. **Jurors.** The "list" of persons prepared by the commissioners, from which jurors are drawn, may be made on the basis of the vote of the several precincts at the last general election.

5. ———: CHALLENGE OF. Although there may be error in overruling a challenge to a juror for cause, yet if the prisoner be not compelled to exhaust his peremptory challenges to exclude him from the panel, it is error without prejudice.

6. **Instructions to Jury.** Instructions examined and sustained.

7. **Murder in Second Degree.** A malicious killing, although done upon a sudden quarrel and in the heat of passion, is, at least, murder in the second degree.

ERROR to the district court for Lancaster county. Tried below before POUND, J., where the prisoner was convicted of murder in the second degree and sentenced to the penitentiary for life.

*Mason & Whedon,* for plaintiff in error.

*Isaac Powers, Jr.,* for defendant in error.

LAKE, CH. J.

Taking up the errors alleged in the order of their presentation by the prisoner's counsel, the first to be considered is the one assigned upon the plea in abatement.

The record contains the plea, the reply of the district attorney thereto, and a demurrer to the reply. Also a motion, filed subsequently to the demurrer, to require the reply to be made more definite. The demurrer and motion were overruled; whereupon the prisoner asked leave to sign his plea in abatement, which was overruled. It had already been signed by his attorneys. Exceptions were taken to these several decisions.

There was no error in refusing the personal signature of the prisoner to the plea. The signature of his attorneys was sufficient, it having been duly verified by his own oath. Besides, even if in order to have been technically correct the personal signature of the prisoner in place of that of his attorneys had been necessary, this technicality was waived by the filing of the reply. It was thereby accepted by the prosecution as sufficiently formal, and the only question concerning it was that of merit.

The plea in abatement asserts the illegality of the grand jury in this, that the "list" of persons from which the jurors were drawn was not composed of persons taken in due proportion from each of the several precincts of the county, as directed by sec. 658, of the code of civil procedure. That the disproportion was from one to three, more or less, in several of the precincts. The plea simply asserts this departure from the required ratio, and that it was caused by a total "disregard of the law" by the county commissioners in making the list.

To all of this the district attorney by his reply opposed what is in effect a general denial. The *first* clause of his reply is in terms a general denial; and by the *second* clause, it is simply alleged in substance that the commissioners made the selection, "as nearly as could be, a proportionate number from each precinct in said county." There is no mention of how, or on what particular basis, the ratio adopted by the commissioners was determined. In this respect, if the law had been really observed, the reply might have been improved upon. If the commissioners took the best means at their command, as for instance, the vote of the precincts at the last general election, the reply should have so stated. In that case, if the apportionment conformed to it as nearly as practicable, it would have been valid, although not conformable to the actual ratio of qualified voters then living in the several precincts. *Polin v. The State*, 14 Neb., 540.

Although they are somewhat crude, the pleadings present an issue of fact squarely as to whether the list of jurors was properly selected. And on this issue, the prisoner had the right to produce the evidence he offered, and be heard. If the disproportion alleged on the one hand and denied on the other actually existed, on the basis adopted by the commissioners, or, if they adopted no basis at all, or an unfair one, and there existed in fact the alleged disproportion as to persons in the several precincts qualified to serve as jurors, then the list was illegal and the plea well taken. Such being the condition of the pleadings, and the character of the issue made by them, the ruling of the court in denying a trial of it was clearly erroneous.

But, it has been suggested that inasmuch as this point was not made in the motion for a new trial, it was waived and is not now available to the prisoner. This, however, is a mistake. The idea is based upon a misconception of the province of a motion for a new trial, by which only such rulings as are made during the trial proper, are intended

to be reviewed, and corrected by granting it. "A new trial, after verdict of conviction, may be granted on the application of the defendant, for any of the following reasons, affecting materially any of his substantial rights: *First.* Irregularity in the proceedings of the court or the prosecuting attorney, or the witnesses for the state, or any order of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial. *Second.* Misconduct of the jury or the prosecuting attorney, or of the witnesses for the state. *Third.* Accident or surprise which ordinary prudence could not have guarded against. *Fourth.* That the verdict is not sustained by sufficient evidence, or is contrary to law. *Fifth.* Newly discovered evidence, material for the defendant, which he could not with reasonable diligence, have discovered and produced at the trial. *Sixth.* Error of law occurring at the trial." Criminal code, § 490.

The grounds here enumerated are the only ones for which a new trial can be properly moved, and it is very clear that neither of them embraces a ruling on a plea in abatement, or any other not made during the trial. The object of this plea was to prevent a trial, and if it had prevailed, such would have been its effect. And the ruling on it is no more subject to review by a motion for a new trial, than is the overruling of a demurrer to a petition in a civil action, which no one surely would think of contending for. Rulings respecting the indictment, or after verdict, are subject to review on error without bringing them to the notice of the court a second time.

Several questions are presented respecting the competency of petit jurors, some of which deserve notice. The juror J. H. Simmons was challenged on behalf of the prisoner for the reason that on his *voir dire* examination he answered that he could not presume the prisoner "to be innocent." The entire examination of this juror shows him to have been wholly impartial. He swore positively that

he had no opinion as to the prisoner's guilt or innocence, and knew nothing of the case except that the deceased had been killed.   On his cross-examination by counsel for the prisoner he was asked: "Do you, or do you not presume him innocent?" and answered: "I could not say as to that, because I have not heard the particulars of the case one way or the other, and have nothing for me to pass an opinion on."   This question followed: "As far as you are concerned, you have no presumption regarding the defendant?"   The answer was, "I have not."   In answer to other questions the juror insisted that he had "no opinion, one way or the other," and could not "presume him to be innocent or guilty."   It is evident that in his several answers he used the word "presumption" as synonymous with "opinion," and the two interchangeably.   The form of the questions put to him tended somewhat to lead him to this mistake.   There is nothing, however, in anything he said to indicate the least unwillingness to extend to the prisoner the presumption of innocence until shown to be guilty by evidence.   And these remarks are applicable to one or two other jurors who were retained against the prisoner's objection.

The examination of William Burling shows that he could not be positive whether he had read the testimony taken at the coroner's inquest or not.   But he had an opinion on the question of the prisoner's guilt which would require testimony to remove, and he would not, although seemingly pressed to do so by the presiding judge, swear positively that, notwithstanding his opinion, he felt able to render a fair and impartial verdict on the law and evidence given in court.   The challenge of this juror for cause ought to have been sustained, but as he did not sit in the case, having been excused or challenged peremptorily, and it not being shown that to exclude him the prisoner was compelled to exhaust his right of challenge, the overruling of it caused no injury.

We see no errors respecting the impaneling of the jury for which the verdict should be set aside.

Several of the exceptions relate to the charge of the court to the jury. The second instruction given was excepted to. It was as follows: "To constitute murder in the first degree there must have been an unlawful killing, done purposely and with deliberate and premeditated malice. If a person has actually formed· the purpose maliciously to kill another, and deliberated and premeditated upon it before he performs the act, and then performs it, he is guilty of murder in the first degree, however short the time may have been between the formation of the purpose and its execution. The length of time that intervenes between the time such purpose is formed and its execution is not material."

Under the evidence we think this instruction was warranted. The jury would have been justified in finding that, between the commencement of the quarrel and the shooting of deceased, there was length of time sufficient for the prisoner to have formed the purpose to kill and to have deliberated upon it. The time was by no means inappreciable, by the decided weight of the evidence and the question of whether the killing was done with deliberation and premeditation was properly left to the jury. And for these reasons, too, the second instruction tendered on behalf of the prisoner, to the effect that the evidence would not warrant a finding of murder in the first degree, was properly refused.

The court was also requested to instruct the jury that, if the killing were done "upon a sudden quarrel and in the heat of passion, they should find the defendant guilty of manslaughter only." This was refused, and properly, too, for the reason that it ignored completely the effect of malice, if that were found to have accompanied the act. A malicious killing, although done upon a sudden quarrel and in the heat of passion, is murder in the second degree at least.

The court was also requested to give the following, which was refused: "Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either involuntary, upon a sudden heat of passion, or inadvertently, upon the commission of some unlawful act."

As a general definition of manslaughter under our statute this was correct. But it was faulty in this, that the last clause had no application to the evidence. There was no pretense that the act was done "inadvertently upon the commission of some unlawful act." This instruction was, therefore, rightly refused.

For the error in denying the prisoner a trial of the issue taken on his plea in abatement, the judgment must be reversed, the verdict set aside, and the cause remanded to the court below for further proceedings conformable to this opinion.

REVERSED AND REMANDED.

THE other judges concur.