The opinion of the court was delivered by
Nicholls, C. J.
The defendant was indicted for murder,"tried, convicted and sentenced to be hung. He has appealed. He asks a setting aside of the verdict and judgment on the ground that the court erroneously refused to charge the jury as requested by him in *1037 three special charges submitted to him, and on the ground that the record does not show that the indictment was found by the grand jury and returned into and presented by them in open court. The last objection urged is presented under an assignment of error — the former in a bill of exception reserved.
The particular error assigned is not tenable. The record, though made up in a very unsatisfactory and careless manner, is not so much so as to call for a reversal. See the eases of State vs. Onmacht, 10 An. 198; State vs. Mason, 32 An. 1018.
The special charges refused were as follows:
1. That to find the accused guilty of murder it is necessary that a malicious intent to kill existed at least five minutes before the killing.
2.. That if the jury find that the accused was drunk and under the influence of liquor at the time of the killing, there can be no malice aforethought as charged and consequently no murder unless the accused drank for the purpose of committing the deed.
3. That the killing in the heat of blood or passion is not murder and the jury must take into consideration whether the accused was in liquor or not so as bo become more easily violently angry.
In respect to his action and ruling the judge says: The jury was charged fully upon the law of murder, and specially as to malice, express or implied, and the court refused to charge the first special charge because the question of how long the malicious intent had existed was a matter of fact for the determination of the jury.
The court refused to charge the special charges second and third in the form presented because they were not considered good law as to matters of drunkenness. The court had explained fully to the jury the difference between murder and manslaughter and the law applicable to both, and with this reservation the bill is signed.
The contention of the accused that “ in order to find him guilty of murder it was necessary that a malicious intent to kill should have existed at least five minutes before the killing” is utterly without merit.
If the malicious intent to kill exists at the time of the killing it is enough.
On this subject Wharton, in his “Law of Homicide,” § 32, says:
“No human gauge existing by which duration of intent can be measured, we are obliged to resort for this purpose to the same *1038 probable reasoning by which the existence of intent is proved. A shoots B in the public streets without authority and without provocation. As reasonable beings usually' premeditate any important step they take, we infer that A premeditated this shot, and this inference is sufficient proof on the lack of all other evidence of premeditation. This is what is meant by the expression we frequently meet with in the books that instantaneous intent is enough. It is not meant by this that it is enough if the defendant formed the intent coincidentally with the blow, for this we have no way of determining. What is meant is that even where we have no other proof of intent prior to the blow, from the blow we may infer the intent; hence it is constantly laid down that intent at the time of killing is enough. It is not intended to assert by this that a person who, under a sudden impulse, kills another is guilty of murder. To say this would be unwarranted for the reason that we have no means of saying that a particular impulse is sudden. What we have a right, however, to say, and what the law means by this maxim to say, is this, that when a homicide is committed by weapons indicating design, then it is not necessary to prove that such design existed at any definite period before the fatal blow. From the very fact of a blow being struck, we have a right to infer (as a presumption of fact but not of law) that the blow was intended prior to the striking, although it may be at a period of time inappreciably distant.” In the leading case of People vs. Clark, 7 N. Y. 385, the charge was “ If the jury believed the killing was with the intention to kill, though that intention was formed at the moment of striking the fatal blow, it was murder,” and the chief justice in delivering the opinion of the court said: “ If there be sufficient deliberation to form a design to kill and to put that design into execution by destroying life, there is sufficient deliberation to constitute murder, no matter whether the design be formed at the instant of striking the fatal blow or whether it be contemplated for months.” See also Wharton on Homicide, § 180.
It will be observed that in the charge submitted, the existence of the malicious intent to kill at the moment of the killing is admitted and it is claimed that this intent should have existed for a defiinite period prior to the same.
The second charge assumes that the fact that a person is drunk at the time of his killing another is so inconsistent with the idea of malice that it becomes the duty of the State to trace the existence *1039 of malice to a period anterior to the drunkenness and to show affirmatively that the drinking was for the purpose of committing the deed, otherwise there can be no murder.
This position is so palpably false as to need no particular discussion.
In Pirtle vs. The State, 9 Hump. Rep. 663, Judge Turley in delivering the opinion of the court said: “It will frequently happen', necessarily when the killing is of such a character as the common law designates as murder and it has not been perpetrated by means of poison or by lying in wait, that it will be a vexed question whether the killing has been the result of sudden passion, produced by a cause inadequate to mitigate it to manslaughter, but still sufficient to mitigate it to murder in the second degree if it be really the true cause of the excitement, or whether it has been the result of premeditation and deliberation, and in all such eases whatever fact is able to cast light upon the mental status of the offender is legitimate proof, and among others that he was at the time drunk; not that this will excuse or mitigate the offence if it were done wilfully, deliberately, malignantly, maliciously and premeditatedly (which it might well be, though the perpetrator was drunk at the time), but to show that the killing did not spring from a premeditated purpose, but sudden passion and heat to the point of taking life without premeditation and deliberation.”
Wharton, referring to this decision, says: “ Here the court especially lays down the rule to be that in all cases where the question is between murder in the first and murder in the second degree, the fact of drunkenness may be proved to shed light upon the mental status of the offender and thereby to enable the jury to determine whether the killing sprang from a premeditated purpose or from passion excited by inadequate provocation. And the degree of drunkenness which may then shed light upon the mental state of the offender is not alone that excessive state of intoxication which deprives a party of the capacity to frame in his mind a design deliberately and premeditatedly to do an act: for the court .says that in the state of drunkenness referred to a party may well be guilty of killing wilfully, deliberately, maliciously and premeditatedly, and if he so kill he is guilty as though he were sober. The principle laid down by the court is that when the question is, can drunkenness be taken into consideration in determining *1040 whether the party be guilty of murder in the second degree,’ the answer must be that it can not; but when the question is, what was the actual mental state of the perpetrator at the time the act was done — was it one of deliberation and premeditation — then it is competent to show any degree of intoxication that may exist, in order that the jury may judge, in view of such intoxication in connection with all the other facts and circumstances, whether the act was premeditatedly and deliberately done.”
The complaint which the defendant urges before us is not that the court excluded evidence on the subject of intoxication for the purpose of showing the actual mental state of the accused at the time the act was done, in order that the jury might determine whether in view of intoxication in connection with all the other facts and circumstances the act was such as to call for a verdict of murder, or whether one of manslaughter, or whether if calling for a verdict of murder it should be an unqualified verdict, carrying with it the death penalty, or a qualified verdict entailing imprisonment for life. If defendant had testimony bearing on that subject it was permitted to be introduced and went before the jury, and being before the jury the court would have acted unjustifiably had it given the charge requested.
The third charge was faulty in assuming that the killing was in the heat of blood and sudden passion, and it would most certainly have misled thé jury. The proposition advanced that because a homicide is committed in sudden passion that, therefore, necessarily it is not murder is not law. There are many cases where that fact would entitle an accused neither to an acquittal nor to a verdict of man? slaughter.
Judgment affirmed.