Blenkiron v. State.

JAMES H. BLENKIRON ET AL. V. STATE OF NEBRASKA.

FILED APRIL 3, 1894.   No. 5472.

1. **Jurors: CHALLENGES: EVIDENCE: REVIEW.** Where the trial court overruled defendant's challenge for cause to a juror, and the record is silent as to the manner in which the juror was dismissed, and does not show that the defendant was compelled to exhaust his peremptory challenges to exclude him from the jury, and the record does disclose that the party challenged was not one of the jurors who tried the case, *held*, that, so far as indicated by the record, there was no prejudicial error in overruling the challenge to the juror.

2. **Witnesses.** In the cross-examination of a witness it is competent to interrogate him in regard to any interest, pecuniary or otherwise, and the extent of such interest he may have in the result of the trial of the case in which he is testifying, as affecting his credibility.

ERROR to the district court for Cedar county. Tried below before NORRIS, J.

*H. A. Miller & Son, B. Ready,* and *Wilbur F. Bryant,* for plaintiffs in error.

*George H. Hastings, Attorney General,* for the state.

HARRISON, J.

On the 21st and 22d days of October, 1891, the plaintiffs in error, James H. Blenkiron and John C. Blenkiron, were tried in the district court of Cedar county, Nebraska, before Judge Norris and a jury, on a charge of felonious assault committed upon one A. G. Bagley, and the trial resulted in a verdict against the Blenkirons of assault and battery. They filed a motion for a new trial, which was argued and overruled, and the court sentenced them, the sentence being that they should pay a fine of $100 and the costs of the prosecution in the sum of $235.96. The defendants have come to this court by petition in error and ask that the case be reviewed.

The first error assigned, which is argued in the brief of counsel for plaintiffs in error, is the sixth assignment of the petition, and states that "the court erred in overruling the defendants' challenge for cause of the juror Marcellus S. Merrill." The portion of the record referring to the impaneling of the jury, in which mention is made of Marcellus S. Merrill, and the only place where we find anything regarding this assignment of error, is as follows: "We challenge the juror M. S. Merrill, because he has served as a juror in Cedar county, Nebraska, in the past two years, when called as talesman, and we offer to prove that he has so served. Challenge overruled by the court. Defendants excepted."

We are nowhere informed in the record of what became of Mr. Merrill or how he was dismissed from the jury, or whether the defendants were forced to exhaust one of their peremptory challenges in order to exclude him from the

jury, but the record does disclose the fact that he was not one of the jurors before whom the defendants were finally tried. The record is also silent on the question of whether the juror objected to by the defendants was one of the regular panel of jurors or was called as a talesman. If there was any error in overruling the challenge to the juror Merrill, it was, so far as the record discloses, error without prejudice. In *Bohanan v. State*, 15 Neb., 209, it was held: "Although there may be error in overruling a challenge to a juror for cause, yet if the prisoner be not compelled to exhaust his peremptory challenges to exclude him from the panel, it is error without prejudice." And in the text of the opinion it is stated by LAKE, C. J.: "The challenge of this juror for cause ought to have been sustained, but as he did not sit in the case, having been excused or challenged peremptorily, and it not being shown that to exclude him the prisoner was compelled to exhaust his right of challenge, the overruling of it caused no injury." (See also *Palmer v. People*, 4 Neb., 68 ; *Burnett v. Burlington & M. R. Co.*, 16 Neb., 332; *Nowotny v. Blair*, 32 Neb., 175.)

The next assignment of error which we will consider is that the court erred in not allowing certain questions to be answered by the witness Bridenbaugh on cross-examination, in reference to his connection as attorney with a civil suit for damages by Bagley against the defendants, based upon the same state of facts or alleged assault as a cause of action, as the criminal charge or complaint in the present case. We will give the portion of the cross-examination of the witness, in which it is claimed the error occurred, in full. It is not very lengthy, and the point will probably be better understood. It was as follows:

Q. What is your business or profession?

A. Why, collecting and practicing law.

Q. I notice this case No. 134, Albert G. Bagley against James H. Blenkiron and John C. Blenkiron, of the civil docket, with John Bridenbaugh marked as attorney for

the plaintiff. You are the same Bridenbaugh, are you, that is marked as attorney for the plaintiff there?

State objects, as being improper cross-examination, incompetent, irrelevant, and immaterial. Objections overruled by the court. State excepted.

A. I have a case against these parties in which Mr. Bagley is the plaintiff and I am attorney for him. I do not know whether that is the case or not.

Q. The case that you have for Mr. Bagley against the Blenkirons is a case for civil damages for this alleged assault, isn't it?

State objects, as being incompetent, irrelevant, and immaterial, and improper cross-examination. Objections overruled by the court. State excepted.

A. Yes, sir; it is a case for civil damages.

Q. For civil damages for this same alleged assault?

A. I think so.

Q. Don't you know so?

A. Why, yes, I said I did.

Q. You prepared the papers in that case, did you not?

A. Yes, sir.

Q. In that petition in that case you allege that the doctor's bill is five dollars, don't you?

State objected, as incompetent, irrelevant, and immaterial, and not proper cross-examination. Objections sustained by the court. Defendants excepted.

Q. That suit is for $2,500 damages?

State objects, as being incompetent, irrelevant, and immaterial, and improper cross-examination, and merely a scheme or device on the part of the attorney to get something before the jury which he knows he is not entitled to. Objections overruled by the court. State excepted.

A. I think that is the amount, yes, sir, that we are seeking to recover.

Q. Isn't it a fact, Mr. Bridenbaugh, that your fee in that case is contingent on what you recover?

State objects, as being incompetent, irrelevant, and immaterial, and not proper cross-examination. Objections sustained by the court. Defendants excepted.

\*        \*        \*        \*        \*        \*        \*

Q. Now, have you had any conversation with Mr. Blenkiron about these transactions since that time?

State objected, as being incompetent, irrelevant, and immaterial, and not proper cross-examination. Objections overruled by the court. State excepted.

A. Why, I don't recollect any conversation with him ; no, sir.

Q. Were you at the preliminary examination of this case?

A. I don't remember whether I was or not. I have forgotten all about whether I was or not. I don't recollect any preliminary examination that was had.

Q. You have a law office here in town, haven't you?

A. Yes, sir.

Q. The night before the preliminary examination in this case didn't you ask the two defendants to go up into your office with you?

State objects, as being incompetent, irrelevant, and immaterial, and improper cross-examination. Objections overruled by the court. State excepted.

A. I met him on the north side of the Hartington State Bank there in the evening, and he said he wanted to speak to me, and I stopped, and we stood there a moment and John C. Blenkiron came up. He was right at hand there, close, and James H. Blenkiron came to me and asked me,—he said, "I want to know what you are going to swear to in that case." I said, "Mr. Blenkiron, if I testify in the case, why you will probably hear it." Otherwise I didn't want him to talk to me about it. He said he didn't want me to testify to anything but the truth. I said: "Mr. Blenkiron, I am not in the habit of testifying to anything but the truth and I wish you would go away and let me

alone." What I believed was that he was trying to tip me or buy me off. I intimated very strongly that he could not do anything of the kind. That was the conversation.

Defendants move to strike the last part of the last above answer from the record. Motion sustained.

Q. Did they go with you to your office at that time?

A. Then?

Q. I asked you if they went with you to your office at that time?

A. They were in my office that evening; yes, sir, after that.

Q. And they went right up with you after that?

A. I think they did. I think they went up with me.

Q. Didn't you ask them to go with you?

A. Well, I will tell you how that occurred.

Q. Didn't you ask them to go up with you?

A. I finally asked them to go up into my office; yes, sir, but it was after some other conversation that we had.

Q. Well, now, when they were up in your office isn't it a fact that you presented a bill to James H. Blenkiron, the defendant here, for attorney's fees and demanded payment —for sixty-five dollars—and did you not say that if he refused to pay the bill that you would testify against him in this case and do him all the harm you could?

A. I didn't tell him any such thing.

Q. That is false, is it?

A. The latter part is entirely false.

State objects, as being incompetent, irrelevant, and immaterial, and not proper cross-examination, and moves the court to strike the answer from the record. Objections and motion overruled. State excepted.

Q. Mr. Bridenbaugh, is it not a fact that on the evening before the preliminary examination in this case, at Hartington, Cedar county, Nebraska, in your office, in the presence and hearing of these defendants, James H. Blenkiron and John C. Blenkiron, you presented a bill for sixty-

five dollars attorney's fees to the defendant James H. Blenkiron and demanded payment, and stated to him that if he did not pay that bill that you would testify against him in this case and do him all the harm you could, or words to that effect?

State objects, as being incompetent, irrelevant, and immaterial, and there is no proper foundation laid for the question of impeachment. Objections sustained by the court. Defendants excepted.

The action of the court in sustaining the objection to the last interrogatory above quoted it is insisted was erroneous, and possibly it was. This we will not decide, but if the defendants were entitled to thus interrogate the witness on cross-examination and to receive his answer thereto for the consideration of the jury for the purpose of affecting the credibility of the witness, or that they might introduce evidence afterward contradictory of his answer, it will be noticed that immediately prior to this question in the cross-examination the witness was asked this same question, almost *verbatim*, and answered it; hence, if sustaining the objection to the second interrogatory on the same subject was error, it was without prejudice, as the defendants had received the full benefit of it in former question and answer and it was not prejudicial error to deny them a repetition of it.

Among the interrogatories propounded to the witness Bridenbaugh during his cross-examination, and given in the part herein quoted, will be found the following question and disposition of it by the court:

Q. Isn't it a fact, Mr. Bridenbaugh, that your fee in that case is contingent on what you recover?

State objects, as being incompetent, irrelevant, and immaterial and not proper cross-examination. Objections sustained by the court. Defendants excepted.

This evidence was sought to be drawn out on cross-examination of this witness to show his interest in the re-

sult of the criminal case, and that he would possibly have a strong desire that the defendants should be convicted.

Great latitude is allowable and should always be given in the cross-examination of a witness on his connection with the subject-matter being tried and about which he is called to testify, and whether it is of a nature to awaken in him a lively and possibly active interest in the outcome of the trial.

In this case it appears that the witness Bridenbaugh was attorney for Mr. Bagley in a civil action for damages against defendants herein, predicated upon the injuries claimed to have been received at the time of the alleged assault, for which they were being tried in this case and in the trial of which he was at the time of cross-examination giving testimony, and the defendants had an undoubted right to interrogate him fully in regard to his interest in the civil suit and to ascertain the exact extent of the interest, whether strong or weak, as affecting his credibility as a witness. In the case on trial he was the only witness, except Mr. Bagley and the defendants, who was present and saw the fracas or affair out of which the prosecution of defendants arose, and hence was a very material witness, and the weight and credibility accorded to his testimony by the jury would exert a strong influence and perhaps a controlling one on the conclusion or verdict to be arrived at and returned by them.

The interrogatory under consideration was, we think, competent, and the defendants entitled to ask it and have it answered, for if answered in the affirmative it would have disclosed that the witness was directly interested in the civil action, almost or quite the same as a party to it, and the defendants should have been allowed, if such was the fact, to show it to the jury in this case as a fact or circumstance to be considered by them when determining the credibility of the witness. The extent of his connection with or interest in the civil case was just as material as the main fact that he was connected with it or had an interest

in it.    In the case of *Olive v. State*, 11 Neb., 1, one of the witnesses for the state, who was attorney for the prosecution, was asked during cross-examination in the district court whether he was not interested in a case brought against the prisoner Olive, by one of the survivors of the deceased, to recover $5,000 damages.    The attorney for the state objected to the question, as "immaterial and improper cross-examination," which objection was sustained, and on review of the case in this court it was held: "Any interest that a witness may have in the result of the trial of a case in which he is testifying, whether pecuniary or other, may be called out on his cross-examination, as affecting his credibility."    Lake, J., says in the opinion: "In this we think the court erred.    The evidence thus sought was material, tending, as it did, to show that the witness was interested in procuring a conviction, and as placing him in his real attitude toward the prisoners before the jury, by which they could better judge his testimony, and it was proper to bring this out on the cross-examination.    Any interest which a witness may have in the result of a trial in which he is testifying, whether pecuniary or other, may be called out on his cross-examination, as affecting his credibility. Mr. Greenleaf says: 'The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious, tests which the law has devised for the discovery of truth.    By means of it the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, his inclination and prejudices,    *    *    *    are all fully investigated and ascertained, and submitted to the consideration of the jury before whom he has testified, and who have thus had an opportunity of observing his demeanor and of determining the just weight and value of his testimony.'    Where it is fully understood by the presiding judge that these are among the purposes of a cross-examination, he should be more inclined to enlarge than to narrow the limits to which

it may be carried.    Prejudicial errors in cross-examination, it will be observed, occur most frequently by restricting too much the field of inquiry."    In *State v. Collins*, 33 Kan., 77, it was held:  "Great latitude should be allowed on the cross-examination of a witness where it is claimed that his testimony is affected by the friendship or enmity he has toward either party in the action, and as a general rule the party against whom the witness is produced has a right to show everything which may in the slightest degree affect his credibility.  The admission by a witness of ill feeling or prejudice against one of the parties to an action does not preclude such party from inquiring into the degree or intensity of the hostile feeling, nor from cross-examining the witness as to the character and extent of the prejudice he may have against such party."    (See also *Kellogg v. Nelson*, 5 Wis., 125; *State v. Krum*, 32 Kan., 375; Wharton, Criminal Evidence, secs. 376, 476, 485; *Morgan v. Freese*, 1 Am. Law Reg., o. s., 92.)    The court erred in not allowing the witness to answer the question, and for this error the judgment must be reversed and the cause remanded.

There are some other assignments of error, but as the main one refers to the sufficiency of the evidence to support the verdict and its discussion would involve review and expression of opinion upon the testimony, inasmuch as there must be a new trial, we will not discuss the evidence or express an opinion as to its weight or sufficiency.

REVERSED AND REMANDED.

POST, J., not sitting.