[No. 2129]

## STATE OF NEVADA, RESPONDENT, v. JOSE SALGADO, APPELLANT.

[150 Pac. 764]

### ON REHEARING

1. HOMICIDE — COEXISTENCE OF EXPRESS MALICE AND IRRESISTIBLE PASSION—"EXPRESS MALICE"—"IRRESISTIBLE PASSION."

   While malice and passion may coexist, and a homicide be the result of both, express malice and irresistible passion, as defined in the statute, cannot coexist; premeditation and deliberation being in express malice, and wanting in irresistible passion.

2. HOMICIDE—INSTRUCTIONS—PREJUDICIAL ERROR.

   The evidence in homicide being such as to make important the giving of correct instructions on first- and second-degree murder, instructing that irresistible passion, if proved, will not reduce the offense from first-degree murder, where the killing was done with express malice, was prejudicial.

3. HOMICIDE—DESIGN—MANNER OF KILLING.

   Where death is produced by stabbing, unless accompanied by other peculiar circumstances, the mere fact of stabbing will not preclude other considerations negativing a formed design against deceased's life.

APPEAL from Fourth Judicial District Court, Elko County; *E. J. L. Taber,* Judge.

Jose Salgado was convicted of murder in the first degree, and appealed. Judgment affirmed (38 Nev. 64, *ante*). Petition for rehearing granted, on which **judgment reversed** and new trial granted.

*Harold P. Hale* and *E. A. Klein,* for Appellant:

The court erred in instructing the jury in regard to the degree of the alleged crime. Express malice and irresistible passion cannot coexist. (*State* v. *Vaughn,* 22 Nev. 300; *Maher* v. *People,* 10 Mich. 212; *State* v. *Hoyt,* 13 Minn. 132; *State* v. *Henderson,* 22 Pac. 1030; *Davis* v. *People,* 114 Ill. 86; *State* v. *Ah Mook,* 12 Nev. 369; *State* v. *Lopez,* 15 Nev. 407; *State* v. *Hill,* 20 N. C. 629, 34 Am. Dec. 396; *State* v. *Johnson,* 23 N. C. 364, 35 Am. Dec. 742; *People* v. *Sanchez,* 24 Cal. 30; *Smith* v. *State,* 83 Ala. 26; *Hornsby* v. *State,* 94 Ala. 55, 10 South. 522; *Martin* v. *State,* 119 Ala. 1, 25 South. 255; Wharton's Crim. Law, vol. 1, pp. 605, 606.)

*Geo. B. Thatcher,* Attorney-General; *E. T. Patrick,* Deputy Attorney-General; *E. P. Carville,* District Attorney, and *Chas. A. Cantwell,* Deputy District Attorney, for Respondent:

The case of *State* v. *Johnson,* 23 N. C. 364, upon which counsel for appellant place much reliance, does not support their contention. If one actuated by express malice in the course of the killing works himself into an irresistible passion before striking the fatal blow, that will not serve to reduce the degree of the crime. (*State* v. *Lopez,* 15 Nev. 408.)

Malice and irresistible passion are not always necessarily inconsistent terms in the law of homicide. (Michie on Homicide, p. 189, *et seq.;* Wharton on Homicide, 3d ed. pp. 99, 201.)

The state of mind at the time of forming the intent to kill, and not subsequently, determines the question of malice. (*State* v. *Ah Mook,* 12 Nev. 376; *State* v. *Hill,* 34 Am. Dec. 396; *State* v. *Henderson,* 32 Pac. 1030.)

Instructions should all be considered and construed together. (*Territory* v. *Hart,* 17 Pac. 718; *State* v. *Brooks,* 57 Pac. 1042.)

By the Court, NORCROSS, C. J.:

A rehearing was granted in this case in order that further consideration might be given to the following instruction:

"'Irresistible passion,' as used in these instructions, means something more than mere anger or irritation. It means that at the time of the act the reason is disturbed or obscured by passion to an extent which might render ordinary men of fair average disposition liable to act rashly, or without due deliberation or reflection, and from passion rather than judgment.

"Nor will irresistible passion, if proved to have existed, be sufficient to reduce the degree of the offense where the killing was done with express malice, as heretofore defined; under our statute express malice necessarily renders any murder, murder of the first degree.

"And if the jury should find from the evidence the

existence of facts and circumstances establishing beyond a reasonable doubt that the defendant had such a reckless disregard. of human life as necessarily includes a formed design against the life of Bessie Andy, the killing, if it amounts to murder, would be on express malice, and consequently would be murder of the first degree."

In the former opinion in this case (38 Nev. 64, *ante*), this instruction was not considered. A more extended examination of the instruction, with a view to its bearing upon the peculiar facts of this case, convinces us that it is both erroneous and prejudicial.

The court had previously instructed the jury, in the language of the statute, that:

"Murder is the unlawful killing of a human being, with malice aforethought, either express or implied.

"Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof."

"Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart."

The jury were also instructed as follows:

"In cases where the unlawful killing is not perpetrated by means of poison, or lying in wait, or torture, or in the perpetration, or attempted perpetration, of any of the enumerated felonies, a difficulty is sometimes experienced in drawing the distinction between murder of the first degree and murder of the second degree; but this difficulty is more apparent than real, and that there may be no confusion in the minds of the jury I will briefly restate the distinction. The real test to be applied in such cases is the presence or absence in the mind of the slayer, at the time of the commission of the murder, of a deliberate and premeditated intent to kill. In order to constitute murder of the first degree, the unlawful killing must be accompanied by a deliberate and clear intent to take life. The intent to kill must be the result of deliberate premeditation. It must be formed upon preexisting reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation."

The expression, "irresistible passion," was used in none of the instructions given, excepting the one quoted *supra.* The expression appears in two rejected instructions, one of which dealt with the law of manslaughter. Reading the definitions of "irresistible passion" and "express malice" into the instructions and we may have as a resultant something like this: Nor will the fact that the killing was done "without due deliberation," if proven so to have been done, be sufficient to reduce the degree of the offense if the killing was done with deliberate intention.

[1] It is contended that irresistible passion and express malice may coexist, and that the instruction is not fundamentally erroneous. For illustration, it is said that if A. forms a deliberate design unlawfully to take the life of B., but that before A. is able to carry out the preconceived design something intervenes to cause in A. an irresistible passion, such subsequently aroused passion would not operate to reduce the degree of homicide. It might be sufficient observation upon the illustration to say that in such a case it would be proper to instruct the jury that the subsequent irresistible passion would not operate to change the previously formed deliberate design, so as to effect a substituted and different causation for the killing. Under such a state of facts, it would be the duty of the court to instruct with reference to such facts so that the jury would not be confused. No such facts are presented in this case, and we need only consider what we think to be true as a general proposition of the law of homicide, to wit, that irresistible passion and express malice cannot coexist. If irresistible passion is "proven to have existed," the homicide could not have been committed with express malice, and it could not be murder of the first degree. Authority exists in support of the proposition that implied malice and sudden passion may coexist, in which case the offense is not reduced to the grade of manslaughter. As said in Wharton on Homicide (3d ed.), sec. 163:

"If malice existed, the crime is murder, and not manslaughter, though sudden passion coexisted and the

homicide was the product of both. * * * If the provocation is inconsiderable, the law, implies malice, and the homicide is murder; if it is great, malice will not be inferred, and it will be deemed to be manslaughter."

In *Commonwealth* v. *Eckerd*, 174 Pa. 137, 34 Atl. 305, it was held, in effect, that passion, even though sudden, must be upon sufficient provocation to repel an implication of malice. In *Brewer* v. *State*, 160 Ala. 66, 75, 49 South. 336, it was held that where the evidence showed that the defendant acted with malice, the fact that such malice may be accompanied with passion or anger aroused by deceased will not reduce the offense to manslaughter. See, also, *Bohanan* v. *State*, 15 Neb. 209, 18 N. W. 129; *State* v. *Ashley*, 45 La. Ann. 1036, 13 South. 738; *State* v. *Johnson*, 23 N. C. 354, 35 Am. Dec. 742.

While malice and passion may coexist and a homicide be the result of both, "express malice" and "irresistible passion," as those terms are defined in the statute, cannot coexist. In express malice there is premeditation and deliberation, which are wanting in irresistible passion. As said in *Nye* v. *People*, 35 Mich. 19, it would be a "perversion of terms to apply the term 'deliberate' to any act which is done on a sudden impulse."

See, also, *Brown* v. *Commonwealth*, 86 Va. 466, 10 S. E. 745.

[2] The instruction complained of in this case not only erroneously assumes that irresistible passion and express malice may coexist, but that if they do coexist, the element of express malice renders the killing murder in the first degree. The proposition of law that express malice, if determined to exist, renders the killing murder of the first degree, taken by itself, may be conceded to be a correct statement of the law. Taken in connection with the other part of the instruction, it renders the whole instruction confusing, contradictory, erroneous, and prejudicial. If the facts shown by the evidence were in this case sufficient in the minds of the jury to cause in the defendant a heat of passion insufficient to reduce the crime to manslaughter, but sufficient to

prevent the killing from being with that deliberate premeditation required to constitute murder in the first degree, it would be the duty of the jury to bring in a verdict of murder in the second degree. (21 Cyc. 732.) The evidence was such in this case as to make it of the greatest importance to the defendant that the jury be correctly instructed upon the law of murder in the first and in the second degree. The defendant had taken Bessie Andy, the deceased, and the father and mother of the latter to a Thanksgiving Day dinner at a Chinese restaurant and, having finished the dinner, were on their way to the Indian camp which was the home of the father and mother of the deceased, when they met the white man Odell and the half-breed Indian or Mexican. Prior to this meeting there is nothing to indicate but that the relationship between defendant and the Indian girl, Bessie Andy, was the most cordial. Defendant testified that he had been living with Bessie Andy for several years previous in the relation of husband and wife. When they met the other parties on the street some casual words of greeting were spoken. Then something was said in the Indian language by Bessie Andy to the half-breed and by him to her. What the conversation was does not appear from the testimony of the state's witnesses. The defendant testified that the half-breed wanted Bessie to go with him to Golconda, and threatened that if she did not do so he would kill Bessie and the defendant. Whatever this conversation was, it caused defendant to become suddenly enraged and to make a violent assault upon Bessie Andy. He knocked her down with his fist, and was beating her when Odell and the half-breed interfered in her behalf. Odell testified that the half-breed struck defendant, and that he also struck defendant several times in the face; that he had his arm around defendant's neck and was hitting him when defendant drew his knife from his pocket. Odell and the half-breed then ran. Defendant chased the half-breed into a nearby saloon and stabbed him. Immediately thereafter he came out of the saloon to where Bessie

Andy was standing and stabbed her to death. The whole proceeding did not exceed a minute or two in time. From a relationship apparently of the most friendly character a change suddenly takes place, and within a few seconds or minutes defendant kills one with whom he has been most intimately associated for years. There can be no doubt of defendant's being in passion. The degree of that passion as affecting deliberation and premeditation was a matter for the jury to consider in determining the degree of guilt from instructions clearly defining the law of murder in its different degrees.

[3] The last paragraph of the instruction in question we think also objectionable and in a case like this, without further elucidation, liable to be misleading. The paragraph appears to be adopted from a note in 21 Cyc. 731, and is based on an instruction given in the case of *Burt* v. *State*, 38 Tex. Cr. R. 397, 40 S. W. 1000, 43 S. W. 344, 39 L. R. A. 305, 330. The circumstances of the killing as disclosed by the evidence in the Burt case would necessarily establish a formed design, and of itself be conclusive proof of express malice in a sane person. The defense in the Burt case was insanity. If sane, the circumstances of the killing precluded every other consideration but first-degree murder. For illustration, if a homicide is committed by binding and weighting the body, then throwing the same into water so death is necessarily produced by drowning, the method of accomplishing death conclusively establishes a formed design against the life of the deceased. Where death is produced by the common methods of stabbing or shooting, unless accompanied by other peculiar circumstances, the mere fact of stabbing or shooting would not of itself preclude other considerations negativing a formed design against the life of the deceased.

For the reasons given, the judgment is reversed, and the cause remanded for a new trial.

COLEMAN, J.: I concur.

McCARRAN, J., dissenting:

I dissent.

The instruction, the giving of which is assigned as error, is as follows:

" 'Irresistible passion,' as used in these instructions, means something more than mere anger or irritation. It means that at the time of the act the reason is disturbed or obscured by passion to an extent which might render ordinary men of fair average disposition liable to act rashly, or without due deliberation or reflection, and from passion rather than judgment.

"Nor will irresistible passion, if proven to have existed, be sufficient to reduce the degree of the offense where the killing was done with express malice, as heretofore defined; under our statute express malice necessarily renders any murder, murder of the first degree.

"And if the jury should find from the evidence the existence of facts and circumstances establishing beyond a reasonable doubt that defendant had such a reckless disregard of human life as necessarily includes a formed design against the life of Bessie Andy, the killing, if it amounts to murder, would be on express malice, and consequently would be murder of the first degree."

It is the contention of appellant that the trial court, in the giving of this instruction to the jury, instructed them upon a physical and mental impossibility. In other words, appellant contends that express malice and irresistible passion cannot be coexistent in the mind of a human being; and we are referred to some authorities holding that there cannot be an irresistible passion and express malice coexisting. Although there is some diversity of opinion on the subject, the weight of authority, and, in my judgment, the better reasoning, support the proposition that malice and irresistible passion may coexist.

In the case of *People* v. *Lilley*, 43 Mich 521, 5 N. W. 982, it was held that where the provocation is slight, or where there is time for the passion to subside and the

blood to cool, or if there is evidence of actual malice, or if the provocation be resented in a brutal and ferocious manner, evincing a malignant disposition—in all such cases, if death ensue, the offense is murder.

"To reduce the offense to manslaughter," says the court, "all these things must be wanting, and the act must be done while reason is obscured by passion, so that the party acts rashly and without reflection."

In the case of *Brewer* v. *State*, 160 Ala. 66, 49 South. 336, it was held that where a killing was wholly the result of passion and without malice, it was manslaughter; but, where the killing was malicious and unlawful, the mere presence of passion and anger would not reduce the crime to manslaughter.

In the case of *State* v. *Ashley*, the Supreme Court of Louisiana said:

"The proposition advanced—that, because a homicide is committed in sudden passion, therefore, necessarily, it is not murder—is not law. There are many cases where that fact would entitle an accused neither to an acquittal nor to a verdict of manslaughter." (*State* v. *Ashley*, 45 La. Ann. 1036, 13 South. 738.)

To the same effect is *Brooks and Orme* v. *Commonwealth*, 61 Pa. 352, 100 Am. Dec. 645.

In the case of *Bohanan* v. *State*, the Supreme Court of Nebraska, in passing upon a requested instruction to the effect that if the killing were done "upon a sudden quarrel, and in the heat of passion, they should find the defendant guilty of manslaughter only," said:

"This was refused, and properly, too, for the reason that it ignored completely the effect of malice if that were found to have accompanied the act. A malicious killing, although upon sudden quarrel, and in heat of passion, is murder in the second degree, at least." (*Bohanan* v. *State*, 15 Neb. 209, 18 N. W. 129.)

In the case of *Commonwealth* v. *Eckerd*, 174 Pa. 137, 34 Atl. 305, the Supreme Court of Pennsylvania held to the effect that the fact that the killing was done in sudden

passion does not prevent it being murder in the first degree, if the evidence disclosed that malice was also present in the mind of the slayer.

In the case of *State* v. *Johnson*, 23 N. C. 354, 35 Am. Dec. 742, the court held, in effect, that provocation never disproves malice; it only removes the presumption of malice which the law raises without proof, and a malicious killing is murder, however gross the provocation.

In a treatise on the Law of Crimes, by Clark and Marshall, the authors hold that in no case will an assault, however violent, mitigate the offense if at the time of the commission of the offense there was malice in the mind of the perpetrator.

"And malice may well be inferred," say the authors, "if the retaliation was outrageous in its nature, either in the manner or the circumstances of it, and beyond all proportion to the provocation, 'because,' as it has been said, 'it manifests rather a diabolical depravity than the fraility of human nature.'" (Clark and Marshall on The Law of Crimes, 356.)

"If malice existed," says Mr. Wharton, in his work on Homicide, "the crime is murder, and not manslaughter, though sudden passion coexisted and the homicide was the product of both." (Wharton on Homicide, 3d ed. 259.)

In *State* v. *Newton*, 28 La. Ann. 65, the court held that it was not error for the trial court to refuse to instruct, in a prosecution for homicide, that:

"Malice excludes passion; passion presupposes the absence of malice. In law they cannot coexist."

In the case of *Martin* v. *State*, 119 Ala. 1, 25 South. 255, the court held that homicide might be committed in the heat of passion suddenly aroused by a blow, and yet be done maliciously; that suddenly aroused passion and malice may coexist, and both cause the act; that when this is the case the homicide, otherwise indefensible murder, is not reduced to manslaughter by reason of the passion. To the same effect is the holding in *Ex Parte Brown*, 65 Ala. 446; *Jackson* v. *State*, 74 Ala. 26; *Prior* v.

*State,* 77 Ala. 56; *Hawes* v. *State,* 88 Ala. 37, 7 South. 302; *Reese* v. *State,* 90 Ala. 624, 8 South. 818; *Hornsby* v. *State,* 94 Ala. 55, 10 South. 522.

Our statute, in attempting to define the import of malice, sets forth:

" 'Malice' and 'maliciously' shall import an evil intent, wish or design to vex, annoy or injure another person. Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty." (Rev. Laws, sec. 6294, subd. 3.)

Murder, as defined by our statute, is the unlawful killing of a human being, with malice aforethought, either expressed or implied. (Rev. Laws, sec. 6384.) Our statute defines express malice as that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

In the case of *State* v. *Lopez,* 15 Nev. 408, this court, speaking through Mr. Chief Justice Beatty, held that under our statute express malice necessarily renders any murder murder of the first degree. In fixing the degrees of murder, our statute sets forth:

"Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." (Rev. Laws, sec. 6386.)

Manslaughter, as defined by our statute, is the unlawful killing of a human being, without malice express or implied, and without any mixture of deliberation. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary, in the commission of an unlawful act, or a lawful act without due caution or circumspection. (Rev. Laws, sec. 6387.)

Under the provisions of our statute, as I view them, the existence of express malice, when the same is proven

to exist in the mind of the slayer at the time of delivering the fatal blow, fixes the homicide as murder of the first degree.

Irresistible passion, such as is contemplated by our statute to reduce a homicide from murder to manslaughter, although aroused from different causes in different individuals, may, however, spring into existence as a condition of mind on an instant's provocation. While this may also be true with reference to that condition of mind depicted by the term "malice," nevertheless, as a general proposition, malice may be, and usually is, a condition of mind brought about in the individual by a more prolonged train of thought. The term "malice" necessarily implies previous consideration. This previous consideration, however, may be one of but short duration or slight mental activity. It need not be a consideration running through days, nor hours, nor even minutes. It may arise and be fostered by the successive thoughts of the mind. It is a stream, so to speak, having its origin in the fountains of hatred and revenge. Hatred and revenge are the handmaids of anger.

The record in this case presents a series of acts on the part of appellant which, although taking place within a short interval of time, disclose a condition of mind on the part of the appellant which, in my judgment, warranted the giving of such an instruction as that complained of here. Appellant and the deceased girl, Bessie Andy, had been for some years prior to the homicide consorting together in and about the town of Elko—commonly speaking, they were living together. Appellant is a Mexican; the deceased, Bessie Andy, was an Indian girl. On the evening of the homicide, appellant and the deceased, together with the father of the deceased and others, had partaken of a meal together at one of the restaurants in Elko. The record discloses that during the course of the meal they had partaken of some liquor. Later, leaving the restaurant, they proceeded to cross the main street of the town of Elko, going northward toward

the Indian camp.    After crossing the railroad track which runs through the main street, the party of which appellant and the deceased girl were members met two Indians. After some conversation in the Indian language between the deceased, Bessie Andy, and one of the Indians, appellant attacked the deceased girl, threw her into a mud puddle in the street, and was beating and abusing her when the other Indians interfered by attacking him; and in the course of the melee the appellant drew his knife and pursued one of the Indians across the street and into the Pioneer Saloon, at the entrance of which place appellant stabbed the Indian, and was continuing in his pursuit when intercepted by parties in the saloon.    Some one in the saloon caught hold of him and turned him around; he passed out again through the door which he had just entered, and without a moment's hesitation rushed into the street, passing several persons in his course, and made directly for the deceased girl, and then and there plunged his knife into her body several times.    The girl fell, and death ensued almost instantly.    The appellant ran away from the scene of the crime, and when brought back to the scene of the murder, a few minutes later, denied that he was the party who stabbed the girl.    The knife with which appellant had done the stabbing was later found some distance from the scene of the crime.

Whatever may have been the justification for his assault on the Indian, or whatever might have been the provocation for his anger toward the Indian who engaged in conversation with the deceased girl at the beginning of the trouble, his malice toward the girl was manifest when, after throwing her into the mud puddle and beating her, and after having pursued one of the parties who assailed him into the saloon, he returned from the saloon and made directly toward the girl—the object of his first and his last malicious assault.    That he knew upon whom he sought to reap vengeance, and recognized the party toward whom his malice was directed, is manifest from the fact that, of all the persons in and about

the place and on the street in that immediate vicinity, he selected the girl to be the victim of his knife.

While I believe that the substance of this instruction and the law sought to be set forth therein might have been better given in another form, nevertheless, in view of the evidence set forth in the record in this case, it is my judgment that no prejudice resulted to the appellant from the giving of this instruction.

In my opinion, the judgment of the lower court and the order denying the appellant's motion for a new trial should be affirmed.