EPHRAIM T. KELLOGG et al., Plaintiffs in Error,

*vs.*

EBENEZER B. NELSON et al., Defendants in Error.

ERROR TO DANE CIRCUIT COURT.

A. agreed to sell and deliver to B., at the warehouse of the latter, within a certain specified time, and for a stipulated price 1,000 bushels of wheat; B. to pay for the wheat as it was hauled per load, except $200, which was paid at the execution of the contract; B. to furnish bags for hauling it: *Held*, the stipulation of B. to furnish the bags, was precedent to the obligation of A. to deliver the wheat, and that to enable B. to recover he must aver and prove performance.

When a witness called by a party, has testified to facts material to the issue, he may be asked on cross-examination, whether or not he has made a bet that the party calling him would recover.

The making a wager by a witness, on the result of the suit in which he is called to testify, does not render him incompetent, but the fact of making such wager is proper evidence to go to the jury as affecting his credibility.

Such conduct in a witness is reprehensible.

On cross-examination, anything which tends to show the enmity or friendship of the witness to either of the parties, is commonly a proper subject of inquiry; so also is anything which tends to show that in the circumstances in which the witness is placed, he has a strong temptation to swear falsely.

THIS was an action of assumpsit, brought by the defendants in error against the plaintiffs in error, to recover damages for an alleged breach of a certain contract for the delivery of wheat.

The declaration alleges, that the said defendants " did by an instrument in writing, bearing date the day and year aforesaid (Dec. 10, 1853), and signed with the firm name aforesaid, of said defendants (E. T. Kellogg & Co.), sell to the plaintiffs one thousand bushels of Canada club wheat at sixty cents per bushel; and said defendants did thereby further agree to deliver said wheat, at the warehouse of said plaintiffs, in Madison aforesaid, on or before the first day of March, A. D. 1854, free of all expense to said plaintiffs; said wheat to be of first quality, well cleaned. and in good order. And the said plaintiff did then

and there, at the time of the execution by said defendants, of said instrument, pay to said defendants in part payment for the wheat aforesaid, two hundred dollars; and it was further provided by said instrument, that the balance of purchase money should be paid on delivery of said wheat, as it was hauled per load; said plaintiffs to furnish bags for hauling it. It was also further provided, by a writing on the back of said instrument, that in case the wheat should be two-thirds club, and one-third hedgerow or Italian, the price to be sixty-five cents per bushel. In consideration whereof, and of the payment of said sum of two hundred dollars, as well as of the undertaking of the said plaintiffs, to pay for said wheat on delivery as aforesaid, at the rate and in the manner aforesaid, the said defendants did then and there, undertake and promise the said plaintiffs, to deliver to the said plaintiffs one thousand bushels of wheat, at the warehouse of said plaintiffs in Madison aforesaid, on or before the first day of March, A. D. 1854, and the said plaintiffs say, that on the 20th day of December, 1853, the said defendants delivered to said plaintiffs, at their warehouse in Madison aforesaid, in pursuance of and to be applied on said contract, seventy-three bushels of Canada club wheat; which said seventy-three bushels of wheat, were accepted by the said plaintiffs, in and upon said contract in part performance thereof, by said defendants, for which said wheat the said plaintiffs did then and there, pay to said defendants the sum of forty-eight dollars and eighteen cents."

The declaration alleges delivery of wheat, by the defendants at other times, and then continues: "And although the time for the delivery, as aforesaid, of the remainder of one thousand bushels of wheat, hath elapsed, and the said plaintiffs were always during that time, and up to the commencement of this suit, ready and willing to have accepted a delivery of said wheat, as aforesaid, and to have paid the said defendants for the same at the rate, and in the manner aforesaid, and to have furnished the bags as aforesaid, to wit: at Madison aforesaid, whereof the said defendants then and there had notice, yet the said defendants did not nor would not, though often requested," &c.

The declaration contained three counts, substantially like the first, except that in the second it is directly averred that the plaintiffs were ready and willing to accept the wheat, to pay therefor, and to furnish the bags.

Plea, general issue.

The cause was tried at the April term, A. D. 1855, and on the trial the plaintiffs offered in evidence the following instrument in writing:

"We, E. T. Kellogg & Co., of Prairie du Lac, Sauk county, Wisconsin, do hereby sell to Nelson & Co., one thousand bushels Canada club wheat at sixty-six cents per bushel; and we hereby agree to deliver said wheat at their warehouse in Madison, on or before March 1st, 1854, free of all expense to said Nelson & Co.; said wheat to be of first quality, well cleaned and in good order; and we hereby acknowledge the receipt of two hundred dollars as part payment for said wheat, the balance of purchase money to be paid on delivery of said wheat as it is hauled per load, said Nelson to furnish bags for hauling it.

"E. T. KELLOGG & Co.

" *Prairie du Lac, Wis., December* 10, 1853.

"In case the wheat is two-thirds club and one-third hedgerow or Italian, the price to be sixty-five cents per bushel.

"E. T. KELLOGG & Co."

On the instrument were indorsed two receipts, one December 20, 1853, for seventy-three bushels at 66 cents, and one January 2, 1854, for thirty-two bushels at 66 cents. To the reading of which in evidence the defendants objected, on the ground that it was inadmissible under the pleadings. The objection was overruled and exception taken.

The plaintiffs called as a witness one Herring, who having testified to matters material to the issue in their behalf, was asked by the defendant's counsel whether he had made a bet with any person that the plaintiffs would recover a judgment in this suit; but the judge rejected the question as illegal and improper, and the defendants excepted.

The defendants offered to prove by other witnesses, that the witness Herring had made a bet of money that the plaintiffs would recover in the suit, which offer was rejected by the judge as improper, and the defendants excepted.

The circuit judge charged the jury among other things, that it was not necessary to aver and prove that the plaintiffs were ready and willing to furnish the bags, as that was not a condition precedent. The undertakings of the parties were independent of each other. The undertakings of the plaintiffs were but a part of the consideration of the defendant's contract; the defendants having received a part of the consideration, might be compensated in damages, and a failure to furnish the bags as contended by the defendants, on the part of the plaintiffs, furnished no excuse for the defendants' breach of contract on their part, as the undertakings were independent.

There were a number of other exceptions taken to the ruling of the court below, but as the foregoing embrace all considered in the opinion of the court, they are omitted.

The jury returned a verdict for the plaintiffs below, on which judgment was rendered, to reverse which this writ of error was sued out.

*Knapp & Frink*, for the plaintiffs in error.

*Abbott, Clark & Coit*, for the defendants in error.

*By the Court,* WHITON, C. J. The principal matters relied upon by the plaintiffs in error to reverse the judgment, relate to the construction which was given at the trial to the contract for the delivery of the wheat, and to the ruling of the court by which the testimony offered to impeach the witness Herring, was excluded from the jury.

The counsel for the plaintiffs in error contend that the performance of the agreement on their part to deliver the wheat, was dependent on the performance of the agreement on the part

of the defendants in error to furnish the bags in which to haul it. The court below instructed the jury in effect, that these agreements of the parties were independent, and that the plaintiffs below might recover although they had not kept ther own agreement to furnish the bags. Questions of this kind most commonly arise in relation to covenants, but the same rule of construction must in this respect, we suppose, be applied to the construction of instruments under seal and to agreements like the one which is the foundation of this suit.

Generally, where the thing which the defendant undertakes to perform is in consideration of something to be done by the plaintiff, the performance on the part of the latter is a condition precedent to the obligation of the defendant. The plaintiff must, therefore, in such cases, aver in his declaration, and prove by testimony, that he has performed on his part, because the obligation of the defendant is dependent on the plaintiff's performance.

Although this principle is quite familiar, it is sometimes not easy to determine whether covenants are dependent or independent, owing to the obscurity in which the real meaning and intent of the parties are enveloped.

When, however, it can be ascertained that the plaintiff has omitted to perform any act which constituted the consideration of the defendant's undertaking, or any part of it, and which was to precede, in order of time, the performance of the defendant, the decisions are uniform that the plaintiff cannot recover.

In giving judgment in the case of *Kingston vs. Preston* (1 *Doug.* 690), Lord Mansfield observed : " The dependence or independence of covenants is to be collected from the evident sense and meaning of the parties, and however transposed they may be in the deed, their precedency must depend on the order of time in which the intent of the transaction requires their performance." *Powers vs. Ware*, 2 *Pick.* 456 ; *Barnes vs. Maden*, 2 *J. R.* 148 ; *Cunningham vs. Monell*, 10 *J. R.* 205 ; *Smith vs. Woodhouse*, 2 *Penn. R.* 240.

The agreement which the plaintiffs below offered in evidence was to the effect, in substance, that the defendants below were to sell and deliver to the plaintiffs below at their warehouse in

Madison, one thousand bushels of wheat of a certain description, for a stipulated price; the plaintiffs below to furnish bags for hauling it, and to pay for the wheat as it was delivered by the load, except the sum of $200, which was paid at the time of the execution of the contract.

It will be seen that the parties fixed with certainty the time when the money was to be paid; and the use to which the bags were to be applied, shows beyond dispute that they were to be furnished before the wheat was to be delivered. It seems clear, then, that if the undertaking of the plaintiffs below to furnish the bags constituted any part of the consideration for the promise of the defendants below to sell and deliver the wheat, the plaintiffs should have been prepared to show that this part of the agreement had been performed on their part. It can make no difference that the thing to be done was trivial, or that it made no material difference with the defendants whether the bags were furnished or not, because when the liability of the defendant is contingent upon the performance of certain acts by the plaintiff, the latter must show a complete performance, or he cannot recover. The question, then, is, whether the agreement of the plaintiffs to furnish the bags constituted any part of the consideration of the defendants for the sale and delivery of the wheat. We are of the opinion that it did.

We cannot doubt that this fact entered into the calculations of the parties when they made the contract, and influenced them when they fixed upon the price which the plaintiffs below were to pay for the wheat.

We are of the opinion, therefore, that the judge erred in the instructions which he gave to the jury upon this subject.

The counsel for the defendants in error contend, that although the judge may have committed an error, yet the testimony shows that the bags were in fact furnished by the plaintiffs below, and that the judgment should not be reversed because the error worked no injury to the defendants.

We do not desire to express any opinion upon the subject of the testimony, and shall not do so. But even if in our opinion the testimony was of the character contended for by the de-

Kellogg et al. vs. Nelson et al.

fendants in error, we should be compelled to reverse the judgment on another ground.

It appears by the bill of exceptions, that the witness Herring was asked by the counsel for the defendants below, whether he had made a wager with any person that the plaintiffs would recover in this suit, and that the judge decided that the question was improper, and that in consequence of this ruling the witness did not answer the interrogatory. We are of the opinion that this was a proper question to be propounded to the witness. On the cross-examination of a witness, anything which shows his friendship or enmity to either of the parties to the suit is commonly a proper subject of inquiry. So also is anything which tends to show that, in the circumstances in which he is placed, he has a strong temptation to swear falsely. It is to be remembered that the jury are the sole judges of the credibility of the witness, and that whatever tends to assist them in the judgment which they are to form upon this subject ought not to be withheld from them. *Monaghan vs. Thompson,* 9 *Watts & Sergt.* 54. The right of counsel to cross-examine a witness upon these subjects must, of course, be restrained within reasonable limits, and must commonly be exercised, subject to the discretion of the judge before whom the cause is tried; but when a question is propounded, with a view to show that the witness has conducted himself very improperly in relation to the suit, on the trial of which he is called to testify, we think the ruling of the judge, by which inquiry into the subject is prevented, is so erroneous as to justify a reversal of the judgment.

We shall not, of course, be understood as deciding that the wager which the witness may have made, created any pecuniary interest which would have prevented him from testifying. We only decide that the question which was asked him was proper, for the purpose of impairing his credit with the jury, and that the judge committed an error in denying to the counsel for the plaintiffs in error the right to insist upon an answer.

For the reasons above given, the judgment of the Circuit Court must be reversed.