The State v. Collins.

---

The State of Kansas v. Charles Collins, *et al.*

1. CROSS-EXAMINATION—*Great Latitude Allowed, When.* Great latitude should be allowed on the cross-examination of a witness where it is claimed that his testimony is affected by the friendship or enmity he has towards either party in the action; and as a general rule the party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credibility.

2. WITNESS, *Ill-Feeling of; Practice.* The admission by a witness of ill-feeling or prejudice against one of the parties to an action does not preclude such party from inquiring into the degree or intensity of the hostile feeling, nor from cross-examining the witness as to the character and extent of the prejudice he may have against such party.

*Appeal from Washington District Court.*

AT the November Term, 1883, of the district court, defendants *Charles Collins* and *I. S. Collins* were found guilty of assault and battery, and each was sentenced to pay a fine of $10 and costs. They appeal. The facts are stated in the opinion.

*J. W. Rector,* and *J. G. Lowe,* for appellants.

*Charles Smith,* county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The appellants in this case were accused of assault and battery, and tried, first, before a justice of the

peace of Washington county, Kansas, and later in the district court of that county, where they were convicted, and each was adjudged to pay a fine of $10 and costs. From this judgment they prosecute an appeal to this court. Their principal complaint is, that the court refused to permit them to cross-examine the complaining witness regarding her motives and interest in the prosecution, and in excluding testimony given by her, which they claim would have shown such bias, prejudice and ill-will toward the defendants as must necessarily have affected her credibility.

The facts, briefly stated, are these: On March 24, 1883, Mary C. Murphy was living with her husband on a farm adjoining that of the defendant I. S. Collins; a herd of cattle belonging to Collins strayed away from his farm and went upon the premises of Murphy, where they were pursued by I. S. Collins and his son, Charles Collins; when Charles Collins undertook to go upon the Murphy farm, Mrs. Murphy came out and forbade him to come out on their premises, and resisted him in his effort to drive the cattle away from Murphy's and back to the Collins farm, whence they had strayed. After some scolding between the parties, it is claimed by Mrs. Murphy that Charles Collins struck her on the shoulder and head, and that in doing so, he was encouraged, aided and abetted by his father, I. S. Collins. Immediately after this occurrence, Mrs. Murphy moved into Washington, the county seat of Washington county, where she resided for some time. This prosecution was not begun until August 14, 1883, and then it was instituted before a justice of the peace at Hollenberg, fourteen miles distant from Washington, where the complaining witness resided.

It appears that about one week prior to the commencement of this prosecution by Mrs. Murphy, I. S. Collins began a civil suit against her husband, son and others to recover ten thousand dollars in damages. For the purpose of throwing doubt upon the credibility of the witness, Mrs. Murphy, the defendants sought to show that this action was not prosecuted in good faith, but rather through malice, and was an outgrowth

of the civil suit and of the bad feeling engendered by the bringing of that suit; that the criminal action was not instituted by her for nearly five months after her difficulty with the Collinses, and that she did not regard the defendants as guilty of any offense, and only caused their arrest and prosecution at the instance, and in pursuance of an arrangement with the defendants in the civil suit brought by Collins; that she did not request the county attorney, who had his office in the city where she resided, to prosecute the action, but that it was conducted before the justice of the peace and prosecuted by private counsel retained by the defendants in the civil suit, and the same counsel employed by them to defend in that suit; that before the criminal action was commenced she and her husband had changed their residence from Washington to Dickinson county, but that as soon as the civil suit was begun, the defendants herein brought her back to Washington county and procured and induced her to bring the criminal action, and thus aid them in the defense of the civil action; also, that soon after the alleged assault she gave a statement of the facts differing materially from the testimony given by her on the trial. She was the principal witness upon the part of the state, and after her examination-in-chief had been completed, the defendants undertook upon cross-examination to inquire into the foregoing facts, and also her state of mind toward the defendants. A great many questions were asked her and in a variety of forms, all of which, upon objection by the state, were excluded by the court. She was interrogated in substance as follows: Whether soon after the alleged assault she consulted the county attorney about the matter, and gave him a different statement of the facts from the one now made by her; whether on such statement he advised her not to prosecute the defendants; whether she purposely concealed the fact of the prosecution from the county attorney; whether she refused to notify the county attorney of the commencement of the prosecution; whether the county attorney was present at the trial before the justice of the peace; whether she did not employ private counsel to prosecute this criminal action; whether prior to the commence-

ment of the civil action against her husband, son, and neighbors, by the defendant I. S. Collins, she had made any complaint about the alleged assault upon her; whether she would have prosecuted this action at all, if said civil action had not been commenced, and if she was not actuated by malice toward the plaintiff in the civil suit; whether the private counsel employed by her to prosecute the criminal action was not paid by the defendants in the civil action; whether the private counsel was not the same that was employed to defend her husband, son and neighbors in the civil action; whether the defendants in the civil action did not request, induce and procure her to bring this prosecution, and did not keep her in their families without expense to her, and did not twice take her to Hollenberg, the place of trial, all for the purpose of aiding them in the defense of the civil action by this prosecution; and also, why she waited almost five months after the alleged assault before commencing the prosecution.

The evidence called for by the foregoing questions was not competent or admissible as a justification or defense of the crime charged, but we think much of it was competent and proper for the purpose of showing the bias, prejudice, motives, interest and leanings of the witness. If the answers to the questions had been favorable to the defendants, as favorable, for instance, as the form of the questions would indicate the defendants desired or expected them to be, who can say that such testimony would not have materially affected her credibility with the jury? The testimony excluded by the court tended to show not alone the ill-will of the witness toward the defendants, but also that she was prompted and influenced to prosecute the defendants by her interest in and sympathy for the persons who had been sued for a large sum of money by I. S. Collins, and among whom were her husband and son. All of these facts are pertinent and important, as bearing upon the credibility of the witness. "A party against whom a witness is produced has a right to show everything which may in the slightest degree affect his credit." (*Cameron v. Montgomery*, 13 Serg. & R. 132.) Great latitude is, and should be

allowed in the cross-examination of a witness, as to his interest in the suit, his friendships or hostility toward the parties, his motives and prejudices.

In *The State v. Krum,* 32 Kas. 375, a case very similar to this one, Chief Justice HORTON says: "The general rule is, that anything tending to show bias or prejudice on the part of a witness may be brought out upon his cross-examination. The reason for this is, that such matters affect the credit due to the testimony of the witness, and therefore it is proper to indulge in this kind of inquiry." (Wharton's Criminal Ev., §§ 376, 476, 485; Wharton on Evidence in Civil Cases, §§ 408, 544, 545, 561; *Batdorff v. Bank,* 61 Pa. St. 183; *Davis v. Roby,* 64 Me. 430; *McFarland v. The State,* 41 Tex. 23; *Morgan v. Freese,* 1 Am. Law Reg. 92; 1 Greenl. Ev., § 449; *Kellog v. Nelson,* 5 Wis. 131.)

In the case last cited the court uses the following language:

"On a cross-examination of a witness, anything which shows his friendship or enmity to either of the parties to the suit is commonly a proper subject of inquiry. So also is anything which tends to show that in the circumstances in which he is placed he has a strong temptation to swear falsely. It is to be remembered that the jury are the sole judges of the credibility of the witnesses, and that whatever tends to assist them in the judgment which they are to form upon this subject ought not to be withheld from them."

Counsel for the appellee practically concedes this much and agrees with this view of the case, but he states that the theory upon which the objection to the testimony was made, was, that the witness had already admitted and testified that she entertained a feeling of ill-will toward the defendants, and therefore that it was not proper for the defendants to go into the details of such admitted facts. If the admission made by the witness in this regard had been as broad and inclusive as the testimony offered or called for by the questions asked, then the objection would have been well taken. The defendants, however, were entitled to know the character and extent of the feeling of enmity which the witness entertained toward them. The question of bias and prejudice, and how far her hostility toward

the defendants may have affected her testimony were for the jury, and they cannot properly determine this until they learn the degree and intensity of the hostile feeling.

This precise question has been considered and determined in *The State v. Dee*, 14 Minn. 39. There it was insisted that while personal controversy and ill-feeling may be shown, yet the particulars thereof are not inquirable into; but the court say that—

" The object of this kind of testimony is to show bias and prejudice on the part of the witness, for the purpose of leading the jury to scrutinize and perhaps to discredit the testimony. If testimony of this character is to be received, it should be received in its most effective form, so that the purpose for which it is introduced may be best accomplished. A mere vague and general statement that hostile feeling existed would possess little force. It certainly must be proper to ask what the expression of hostility was, for the purpose of informing the jury of the *extent and nature* of the hostile feeling, so that they may determine how much allowance is to be made for it."

Again, in this case, the defendants sought to show not only the malice and ill-feeling of the witness toward the defendants, but that she had an interest in the suit aside from what the ordinary witness would have, in this: that she had entered into an arrangement with the defendants in the civil suit by which she would prosecute the defendants, and thus aid them so far as it would, in the defense of that suit. This evidence was not embraced or covered by the mere admission of ill-will and hatred toward the defendants; and certainly it was competent to go to the jury to enable them in determining how far such interest may have swayed her mind, warped her judgment, and how far it may have colored or perverted the testimony given by her to the jury.

It follows that the ruling of the court in refusing to permit the questions affecting the credibility of the witness to be asked and answered was erroneous, and its judgment must therefore be reversed, and the cause remanded for a new trial.

All the Justices concurring.