# CHARLESTON.

## STATE v. DUFFIELD.

### Decided March 16, 1901.

1. CRIMINAL LAW—*Verdict.*
   The record shows that Henry Hunt is one of the jury impaneled and sworn in the case, and the verdict is signed, "W. H. Hunt." This will not affect the verdict. (p. 275).

2. FORGERY—*Indictment—Variance.*
   An indictment for forged indorsements on a note which is set out in *haec verba,* and which note, as it appears in the indictment, purports to be signed "J. F. C. Duffield," as maker. A similar note signed by J. F. C. Duffield, as maker being offered in evidence in support of said indictment. *Held,* variance immaterial. (p. 279).

3. INDICTMENT—*Description of Forgery Act.*
   In a prosecution for forging, or attempting to employ as true any forged instrument, it is sufficient to describe the same in the indictment in such manner as would sustain an indictment for the larceny of such instrument. (p. 280).

Error to Circuit Court, Roane County.

J. F. C. Duffield was convicted of forgery, and brings error.

*Affirmed.*

J. W. C. ARMSTRONG, A. E. KENNEY, and CHARLES E. HOGG, for plaintiff in error.

EDGAR P. RUCKER, ATTY. GEN., and LUTHER C. ANDERSON, for the State.

MCWHORTER, JUDGE:

J. F. C. Duffield was indicted in the circuit court of Roane County for forging the names of A. J. Arnold and C. L. Moore by endorsement thereof on the back of a note of which the following is a copy: "Twenty dollars and fifty-five cents. Spen-

cer, W. Va., Nov. 13, 1896. Ninety days after date I promise
to pay to the order of A. J. Arnold twenty and fifty-five one
hundredths dollars, value received. Negotiable and payable at
the Bank of Spencer, Spencer, W. Va. J. F. C. Duffield," and
uttering and attempting to employ as true the said note, and
said forged and fraudulent endorsement. On the 31st of
August, 1900, the defendant having entered his plea of not
guilty, a jury was impaneled, and the jury having heard the
evidence and arguments of counsel returned a verdict of guilty.
Defendant by his counsel moved the court to set aside the ver-
dict and grant him a new trial, because the verdict is contrary
to the law and the evidence, and because of certain rulings of
the court during the progress of the trial before the jury, which
motion was overruled, to which ruling of the court the defend-
ant excepted and took three several bills of exceptions, which
were saved to him in the record. The first assignment of error,
that it does not appear from the record that there was a finding
of the indictment by the grand jury, has been corrected, the
record having been supplied on writ of *certiorari*. The second
assignment is that the verdict is signed by W. H. Hurst, as
foreman of the jury, when the record discloses that no such
person was impaneled as one of the jury. It is true that the
printed record shows that W. H. Hurst signed the verdict, and
that no person by the name of Hurst was impaneled on the
jury, but an inspection of the manuscript record shows the
name of W. H. Hunt as signing the verdict, and the name Hurst
in the printed record was merely a typographical error. The
name of Henry Hunt appears among the jurors impaneled.
There was but one Hunt on the jury, and it is not at all prob-
able that after the jury was sworn that Henry Hunt got out
of the jury box and W. H. Hunt, another and a different person
took his place in the presence of the court and its officers. The
verdict was rendered on the same day the jury was impaneled,
and if the jury left the court room before retiring to consider
of the verdict, they were in the custody of the sheriff and his
deputies, who were sworn to keep them together and to permit
them to have no communication with any one concerning the
matter before them. The juror Hunt evidently was called
Henry, the name by which he was commonly known, and when
he wrote his name to the verdict, he did so by using his initials
only. There is scarcely a more common Christian name than

that of William Henry, and it is almost certain that this was the full name of Henry Hunt, the juror in this case. *Younger* v. *State,* 2 W. Va. 579, is invoked to support this assignment of error, in which case the name of P. B. Shrively was signed to the verdict, when no man by the name of Shrively was impaneled on the jury, and no name anything like it. One P. B. Smith being the same initials only, was the nearest approach to it. *State* v. *Morgan,* 35 W. Va. 260. The third assignment of error is based upon the fact that the court obliterated a part of the ·endorsement contained on the note upon which the charge of forgery in this case is predicated, and then allowed the note so obliterated to be offered in evidence, as shown in bill of exceptions No. 2. The endorsement so obliterated was no part of the note or·endorsement for the purpose of using it, but was simply an affidavit written on the back of said note, made and signed by A. J. Arnold, one of the alleged endorsers of said note, to the effect that the signature on the back of said note was a forgery, that he did not sign his name, neither did he authorize his name to be used in said note. Defendant's counsel cites *State* v. *Johnson,* 26 Iowa, 407, 96 Am. Dec., 158, in support of his assignment, where it is held that, "No technical words, such as 'tenor,' etc., need to be used to express that copy of instrument is set out in the indictment. For this purpose the words 'of the purport and effect following' are sufficient, at least, when the indictment then does, in fact, set out a copy of the instrument." It was wholly unnecessary, in case at bar, to set out the affidavit endorsed on the back of the note, as it was no part of the instrument. *Burress Case,* 27 Grat. 934 (944) ; *Perkins' Case,* 7 Grat. 651. The endorsements used for the purpose of negotiating the note and procuring the proceeds thereof from the bank were not obliterated. The note with the endorsement as used in its negotiation was proper to go in evidence if it corresponded to that set out in the indictment and the defendant was not prejudiced thereby. The fourth assignment, "because said indictment undertakes and does not set out *in haec verba* or literally, the note charged to have been forged, and the name appended to the note described in the said indictment is that of 'J. F. C. Duffield,' while the name of the party appended to the note read in evidence to the jury is that of 'J. F. C. Dufield,' thus showing a clear variance between the allegation of the indictment and the proof offered to

support it." The indictment contains four counts, and the
note, with its fraudulent endorsements alleged to have been
forged and uttered set out in *haec verba* in each count and in
each count described as being signed "J. F. C. Duffield." On
the trial the State offers in evidence a note identical with that
described in the indictment, except that it is signed by "J. F. C.
Dufield." In *Crawford* v. *State,* 40 Tex. Crim. Rep. 344, it is
held that, "Where an indictment ·charges Jasper Crawford
with passing a forged instrument, and the instrument itself
shows that it purports to have been drawn in favor of Jasper
Crawford, this would constitute a variance as to the name."
Also *State* v. *Fay,* 65 Mo. 490, it is held that although their
statute dispenses with the common law rule which requires that
an indictment for forgery should set out the instrument alleged
to be forged in *haec verba;* "but it is still necessary that it should
be described accurately; and very slight inaccuracies will be
fatal. An indictment described the instrument alleged to be
forged as a note for sixty dollars, signed with the name of James
C. Orr. The instrument offered in evidence was a note for
sixty dollars bearing interest at ten per cent. from date and
signed by J. C. Orr. *Held,* a fatal variance, both as to the name
of the supposed maker and the liability which the instrument
purported to have created," and in *Agee* v. *State* 113 Ala. 52,
the indictment set out the forged instrument, an order in favor
of "King Jackson" for goods, directing the bill therefor to be
charged to a designated person "on merchandise," an instru-
ment offered in evidence which is an order for goods in favor of
"Kinge Jackison," and directs the bill to be charged to the same
designated person "on mchin-dise" is held not to be the paper
laid in the indictment, and is inadmissible in evidence, "the
variance between the two papers being fatal." And in *State* v.
*McEwen,* 151 Ind. 485, it was held, "In a prosecution for lar-
ceny proof that one of the owners of the stolen property was
Franklin A. instead of Frank A., as charged in the indictment
would constitute a fatal variance," yet it is stated in the opinion
that if the record had shown by the evidence that "Franklin A."
was commonly known by the name of "Frank A." the variance
would have been cured. In *Sullivan* v. *People,* 6 Col. 458, "The
allegation in the information was that the money alleged to
have been stolen was the property of Michael Johnson, and the
proof was that it belonged to Mike Johnson. *Held,* that the

variance is fatal." It was said in that case, "It is essential that the information should set forth the name, if known, of the owner of the money alleged to have been stolen; and the name having been set forth, that it should be proved precisely as made. The law gives the accused the right to know exactly what he is required to meet, to the full extent of the ability of the prosecutor to inform him; and he cannot be confronted with one charge and convicted upon another." In *State* v. *McDevro*, 23 Tex. App. 429, "The complaint alleges the surname of the accused as McDevro, the information as McDero. *Held,* that the variance is fatal." *State* v. *Street*, 1 Am. Dec. 589; *Com.* v. *Brickley*, 145 Mass. 181; *Willis* v. *State*, 24 Tex. App. 487; *State* v. *Nichols*, 39 Tex. Crim. Rep. 80. In *Westbrook* v. *State*, 23 Tex. App. 401, it is held that, "If the indictment sets out the alleged forged instrument both by its purport and its tenor, any repugnancy between the two allegations is fatal to the indictment. The "purport" clause in the indictment, in this case, alleged the name of the injured party to be "C. J. Chapman," whereas the "tenor" clause alleges the name to be "C. J. Chatman." *Held,* that the obvious repugnancy between the two is fatal to the indictment." In *Brown* v. *People*, 66 Ill., where the indictment sets out the name signed to the forged instrument as "Otha Carr," it was held not to be supported by the instrument offered in evidence signed by "Oatha Carr." In *Murphy* v. *State*, 6 Tex. App. 554, it was charged that the forged instrument was signed "Pat. Wheelan," and proved that it was signed "P. Wheelan" or "D. Wheelan," and the court held this was a fatal variance, and the judgment of conviction was reversed. See also *State* v. *Woodard*, 56 Kan. 217.

On the other hand in *State* v. *Bean*, 19 Vermont, it is held that "In an indictment for forgery a variance between the count and the forged instrument, in the spelling of a name, is unimportant, if the same sound is preserved." It is there said, "the difference between "Herriman" and "Harriman" is unimportant; it is obviously *idem sonans* which makes the names the same in law, for no man is to be acquitted in consequence of bad spelling, merely, in the indictment, if substantially the same sound is preserved." In *Santolini* v. *State*, 6 Wy. 110, (71 Am. St. Rep. 906), it is held, "there is no such variance between the name 'G. W. Edwards' as averred in an information for forgery, and the name 'G. W. Ewareeds' as signed to the

alleged forged instrument, as to require the exclusion of the
latter as inadmissible in evidence; but the effect of such variance
is for the jury to determine, subject to the rule that if such
names are not *idem sonans* the variance is fatal." So in *Regina*
v. *Wilson,* 2 Car. & Kin. 527, where it is held, "In a case of for-
gery the name of John McNicoll signed to the forged instru-
ment was, in the setting out of the forged instrument in the
indictment, written 'John McNicole,' not to be a variance." In
*State* v. *Gryden* 44 La. Annual 962, (32 Am. St. R. 358), it is
held that, "immaterial variances resulting from clerical inaccu-
racies in transcribing and misspelling a name forged are not
necessarily fatal to the indictment. Therefore, setting out in
the indictment the name forged as that of J. A. Gandy is not
fatal, though in the original instrument such name has much
more the appearance of Jo Jandy, if such instrument is very
illegible and was represented by the accused to have been written
by Mr. Gandy." In the opinion of the court in that case it is
said after quoting Wharton on Crim. Pl. and Pr., "The great
rigor of the old English law in this respect was one of the con-
sequences of the barbarious severity of the punishment imposed.
A more humane system of punishment was followed by a more
rational system of pleading," says, "Immaterial variances re-
sulting from clerical inaccuracies in transcribing and mis-
spelling even of the name forged, are no longer necessarily
fatal." See also *People* v. *Philips,* 70 Cal. 61. Cases holding
the same way might be multiplied, as they might be also on the
other side, but it seems that the decided weight of the authori-
ties in Virginia and our own State favor the contention that the
slight variance in case at bar is immaterial, and that the note
was properly admitted in evidence. *Mabry's Case,* 2 Va. Cases
296; *Halkenis' Case, Id.* 4; *Burress' Case,* 27 Grat. 934. *State*
v. *Henderson,* 29 W. Va. 147, syl. 7, "The receipt described in
the indictment agrees with the receipt offered in evidence at the
trial with the exception that the endorsement in the latter, 'Wit-
ness Susan M. Armstrong,' is omitted from the former; *Held,* no
material variance." Only where the variance is material should
the instrument be excluded as evidence. *State* v. *Fleshman,* 40
W. Va. 726. And in harmony with the latter view of the case
is section 6, chapter 158, Code, "In a prosecution for forging,
or altering or attempting to employ as true, any forged in-

strument or thing, and in a prosecution for any of the offenses mentioned in chapter 146, it shall not be necessary to set forth any copy or *fac simile* of such instrument or other thing, but it shall be sufficient to describe the same in such manner as would sustain an indictment for stealing such instrument or other thing, supposing it to be the subject of larceny." Counsel for defendant admits the fifth assignment is not well taken. As to the sixth assignment, "Because there is no evidence showing that the defendant if he did commit the offense charged in said indictment committed the same in the county of Roane." The note with the forged endorsements was used and discounted in the bank at Spencer, in the county of Roane. The cashier who testified in the case had no definite recollection of the transaction in the bank of the discounting of the note in question, but remembers of defendant being present in the bank having notes discounted. About two weeks after the protesting of the note the cashier had a letter from the defendant, dated at Sutton, February 26, 1897, in reply to a letter of the cashier, calling his attention to the note, asking the cashier, "not to put the note out for a short time and I will pay it off with ten per cent. interest, would have saved protest had it not been for the sickness of my wife." On the 12th day of February, 1897, defendant wrote a letter, dated on this day at Sutton, West Virginia, to the endorser, A. J. Arnold, informing him that he sometime ago was at Spencer when he had only one and one-half day to get back home and had a note of twenty dollars due in bank "and not meeting my endorsers there as they had promised, and not having time to see them, also not being able to secure any new ones, used your name in the renewal of the same, which of course was wrong, but relied on you not caring from the fact that I had been honest and you a warm friend of mine, and are still the same, and intend to pay the same in a few days. The note is now due and will be protested and I don't want you to be of opinion that you will be molested in the matter. * * * Would have written you sooner about the matter but had forgotten it until a few days ago when I got a dun notice. Now if this is not all right with you let me know by return mail and I will make it all right with you. I am worth twenty times that amount here at Sutton and if you doubt it write to the clerk of the county court and ask him if I own a house and lot worth from one thousand seven hundred dollars to two thousand dol-

lars, with a small debt against it. Let me hear from you soon."
And on the same day wrote a similar letter from Sutton to C. L.
Moore, the other endorser, telling him about being in Spencer
and his endorsers failing to meet him as they had agreed, had
used his name in renewing a small note, stating that he expected
it would be protested, as he could not go to attend to it. These
letters contain a sufficient confession that the crime was com-
mitted at the bank in Spencer. He begins his letter to Moore
as follows: "Am humble to tell you that I used your name in
renewing a small note in Spencer bank, and the reason I did it
was this: I was in Spencer and my endorsers were not there as
they had agreed," etc. This makes it clear that it was done in
Spencer, and the trial court sitting in Spencer trying the case
will take judicial notice that Spencer is in Roane County. In
*State* v. *Hobbs,* 37 W. Va. 812, syl. 4, "It is not necessary that
the proof should be direct that the crime was committed in the
county charged. It is enough if the proof be inferential, but
sufficient."

This case is cited by defendant's counsel, but I cannot see why,
as it certainly does not help their case. In their brief defend-
ant's counsel makes a further assignment of error. "That the
forgery of the endorsement or the utterance thereof was not to
the prejudice of anyone, and that therefore the offense charged
was not made out by the proof in the case," and cites *Barnum* v.
*State,* 45 Am. Dec. 601. "Evidence tending to show that the in-
strument forged could not prejudice the rights of any one under
any circumstances is competent to go to the jury," and their
argument is to say the least unique. They say, "It appears in
evidence that the bank of Spencer where the note in question
was payable already held a note exactly like the one in this case,
except for a larger amount, the same endorsements on which had
already been forged by some one—that is, the bank held a worth-
less piece of paper for a larger amount than the one upon which
the prisoner was indicted, and the prisoner obtained this larger
worthless piece of paper from the bank by the exchange of
another worthless piece of paper of a smaller sum, paying the
bank as it were, a premium of four dollars for the exchange.
See the evidence of O. B. Wetzel at pages 23, 24 of the printed
record. The endorsers were certainly not liable on the former
note, nor could the bank have enforced payment thereof against
them or either of them. The former note was for twenty-four

dollars, while the one in question was for less, there having been paid to the bank thereon the sum of four dollars. Now when the bank surrenders a forged piece of paper for another piece of the same character, who is injured and how, and wherein consists the intent to defraud?" It amounts to about this: A. steals a horse from B., worth one hundred dollars—he afterwards returns the horse to the stable of B. and takes and steals one in its place worth only seventy-five dollars—B. is certainly not prejudiced by the last transaction, but as far as A. is concerned it amounts to this, he has stolen two horses instead of one. The judgment will be affirmed.

*Affirmed.*