[No. 6919.]

## TOLLIFSON ET AL. V. THE PEOPLE.

1.  **Criminal Law—Testimony of Accomplice—Corroboration** —Evidence of circumstances, or of a confession, is admissible to corroborate the testimony of an accomplice.—(221)

The testimony of an accomplice held sufficiently corroborated to support a conviction.—(221)

2.  ——**Larceny—Property in the Goods**—An information for the larceny of ore alleged the property in a certain company. The testimony was that the ore came from the properties of the company named; that while it was being operated under leases, the ore, by the terms of the leases, remained the property of the company until settled for, and that it was shipped in the name of the company. Held, there was no variance in this respect.—(222)

3.  ——**Corporate Capacity of Corporation Alleged as Owner** —It is sufficient if the prosecution shows that the corporation named was a de facto corporation acting as such; and this may be made to appear by reputation, or in the absence of objections, by the testimony of any one cognizant of the fact.—(223)

4.  ——**Burglary—Of Storehouse — Evidence —** The information charged the breaking, etc., of a "storehouse." The testimony showed that the apartment broken into was used for storing machinery, supplies, and high-grade ore; and it was termed by some of the witnesses sometimes a storeroom, and sometimes a shafthouse. Held, there was no variance.—(224-226)

5.  ——**Evidence—Witness—Accomplice—Cross-Examination** —Where a confessed accomplice of the accused testifies for the

prosecution, great latitude in cross-examination should be allowed; but the matter is within the sound discretion of the judge presiding at the trial. The weight of authority is, that the accomplice is not to be asked if he has been arrested, informed against, or imprisoned, for a distinct offense of which he has not been convicted.—(227, 228)

6. ——Accomplice as Witness—Discrediting—The record of an accusation against the accomplice, which has no connection with the charge under investigation, is not admissible as tending to show an agreement of the prosecutor not to proceed against the accomplice upon such independent charge.—(227-231)

7. Instructions—Objections and Exceptions to, must be made and announced at the time when the jury is charged. Even a custom of the court will not, it seems, entitle the party to present objections to the charge, and take exceptions thereto after the termination of the trial.—(232, 233)

8. Error Not Assigned—The denial by the court below of a motion, not assigned for error, will not be considered.—(233)

9. Verdict—Misnomer of Juror, manifest at the reception of the verdict and not then suggested or objected to by the accused, will not, when no prejudice to the accused appears, suffice to reverse judgment of conviction.—(233, 234)

*Error to Teller District Court*—Hon. W. S. MORRIS, Judge.

Mr. E. G. VANNATTA, Messrs. ORR & CUNNINGHAM, Mr. F. B. LAMBERT and Mr. HORACE N. HAWKINS for plaintiffs in error.

Hon. JOHN T. BARNETT, attorney general, and Mr. GEORGE H. THORNE for the people.

Mr. JUSTICE HILL delivered the opinion of the court:

The plaintiffs in error were convicted of burglary and larceny; from a sentence accordingly, they have brought the case to this court for review, on error.

The first point urged is, that it was error to allow a conviction upon the uncorroborated evidence of a confessed accomplice; the witness Wiley, a boy

seventeen years of age, participated in the commission of the crime, turned state's evidence, and it is contended that his evidence has been in no degree corroborated.

The witness Morton testified that the defendant Tollifson made admissions to him that this ore was stolen by himself, the other defendant and Wiley, as testified to by Wiley. He further stated that he saw the ore that was brought to the assay office, as related by the witness Wiley; that the defendant Tollifson informed him that it was the ore stolen, and that he, Tollifson, the defendant Mattox and the witness Wiley, were there and participated in the treating of the high-grade ore, as stated by Wiley. This witness further stated that the defendant Mattox admitted that he took the ore up to the assay office, where, when it was settled for, $5.00 that he owed them was taken out for such indebtedness. Also, this witness stated that he was engaged in high-grading for some time with the defendant Tollifson, and that they had a quarrel and dissolved their partnership. Another witness testified to seeing Wiley and another man go to the assay office at the time stated by Wiley. Other witnesses testified to the description of the property, where the ore was taken from, and the condition of the place after the robbery, and to other facts which go to corroborate the testimony.

Corroborative evidence may be circumstantial. —12 Cyc. 456.

A confession or admission of the accused is admissible to corroborate an accomplice.—12 Cyc. 458.

It is unnecessary in this case to pass upon the question whether a conviction should stand on the uncorroborated evidence of an accomplice or to review former decisions of this court upon that ques-

tion, for the reason that the testimony of the witness Wiley is sufficiently corroborated by other competent evidence. We find no error in this respect.

Second, it is claimed that there is a variance between the information and the proof, in this, that there is no evidence to sustain the charge that the building alleged to have been burglarized belonged to The Vindicator Consolidated Gold Mining Company. We cannot agree with this contention and think that the testimony, when taken as a whole, is sufficient to establish this fact.

The third point urged is a similar contention pertaining to the ownership of the property; but, when considered as a whole, we think the evidence sufficient. The witness Whitney, when he was asked, Q. "Whose ore was that?" answered, "Vindicator Consolidated Gold Mining Company." While it is true, his testimony shows that there were leases on a royalty, he also stated, that the company owned the ore until it was settled for; that it was being shipped in the company's name and that the agreement between the company and the lessee was to the effect that the ore produced should remain the property of the company until settled for. All the testimony on this subject tended to show, that the property being mined was that of The Vindicator Consolidated Gold Mining Company; that the buildings were upon its. land and that the ore taken was the property of the company.

The fourth assignment pertains to an alleged variance between the information and the proof in regard to the owner of the property. It is claimed that there is no legal evidence to show that it was ever a duly organized corporation, or a corporation in fact and acting as such. The witness Whitney testified that he was acquainted with the property of The Vindicator Consolidated Gold Mining Com-

pany, and that the ore stolen belonged to that company. The following question was asked him: Q. "What is The Vindicator Consolidated Gold Mining Company?" His answer was, "A corporation." There were no objections to this testimony.

The witness Trevarrow stated, that he was the superintendent of The Vindicator Consolidated Gold Mining Company; that it was operating its properties under leases, etc.; that he looked after the company's interest; that the checks were sent to The Vindicator Consolidated Gold Mining Company at Denver, where royalty is deducted and the remainder sent to the mine and turned over to the lessee; that the ore was shipped as the property of the company; that the company's agents settle for the ore with the lessees. There was other testimony along the same line showing the method and manner of the company in the transaction of its business, all of which tended to show that it was generally recognized as a corporation. While it is necessary to show the corporate capacity of the party (if a corporation) from which goods are alleged to have been stolen, the weight of authority is to the effect that it is only necessary for the prosecution to prove that the company was *de facto* organized and acting as a corporation. In the absence of objections this may be proved by one, who, of his own knowledge, is acquainted with the fact, or it may be proved by reputation.—*Miller v. The People,* 13 Colo. 166; *Perry et al. v. The People,* 38 Colo. 23; *Reed v. The State,* 15 Ohio 217; *People v. Barric,* 49 Cal. 342.

We are of opinion that the evidence was sufficient to establish *de facto* the corporate existence of the company.

Contention is made that the evidence is not sufficient to show that the building broken into was a storehouse, as alleged in the information; the proof

shows that some of the witnesses called it the shaft-house. The witness Wiley stated he knew the store-house was broken into on the 17th of March by Mattox, Tollifson and himself. He also stated "on this particular night the arrangement was to go to the shafthouse and get this ore"; he stated further, "the door of the storehouse was open"; also, "no talk before we went over to the shafthouse to break it in"; again, he said, "the ore was brought to the Vindicator shafthouse door." Upon redirect exam-ination, he stated, "Mattox broke open door of the storehouse; saw storehouse by daylight after-ward; door next morning was torn; whole panel out." The witness Morton testified in the alleged confessions of the defendant Tollifson, that, in sub-stance, Tollifson stated to him that they went up about 2:30 in the morning and waited until the shift went off and pried the outside door of the shaft-house open. The testimony of the witness Whitney is to the effect that the ore was stored in the store-room and that the door going from the shafthouse into the storeroom was ordinary cheap pine panel door. The evidence of the witness McMullin as to where the ore was taken from, is to the effect that it was in the room used for the purpose of storing machinery, supplies and high-grade ore that had been sorted. From this counsel say:

"To say the least, there is a great confusion in the plaintiff's testimony as to what was really broken into, and the preponderance of the evidence seems to be that it was a shafthouse, instead of a storehouse"; for which reasons they urge that the fact that the storehouse was broken into could not be considered as being proven beyond a reasonable doubt. At common law, burglary was defined to be "a breaking and entering of a mansion house of another in the night with the intent to commit some

felony within the same, whether such felonious intent be executed or not.''—Russell on Crimes, 785. It will thus be seen, that common-law burglary and the statutory burglary of this state have but few elements in common, and consequently English cases and others, in some states, give us but little light upon the question under examination. Under our statute many acts constitute burglary, which, but a few years ago, were a different offense or no offense whatever. The information is in the exact language of the statute, and the fact that some witness may have used a different expression and stated the building was a storeroom, in our opinion, is not material. To a certain extent the words storeroom and storehouse are synonymous.—Webster's Dictionary. And it must have been so understood from the manner in which the witnesses used the words, interchangeably, referring to the same building.

The evidence as to what kind of a building was broken into was before the jury; the action was tried where the property is situate, in Teller county, by a jury, presumably residents of that county and familiar with the general phrases and language used in connection with such buildings and property. The fact that some witnesses have stated the ore was stored in a storeroom, instead of a storehouse, or in the storeroom of the shafthouse, instead of the storeroom of the storehouse, and others referred to the door as the one from the storeroom, others into the shafthouse, in our opinion, is immaterial. The evidence, as a whole, shows that the buildings were similar to those upon many other mining properties, and establishes the fact that the building, or that portion of the building which was broken into, was used for the purpose of storing machinery, supplies and high-grade ore after it had been sorted

(15)

out; *thus making of it a storehouse.* Webster defines storehouse as a building for keeping goods of any kind, especially provisions; a magazine, a repository, a warehouse; and a storeroom as a room in a storehouse or repository; a room in which articles are stored. From the evidence, the jury were justified in finding that the defendants were guilty of breaking and entering a storehouse, as alleged in the information.

When considered as a whole, we think that the evidence shows that the burglary and larceny were both committed without the consent of the owner. The assignment of error pertaining thereto is not well taken.

It is claimed that it was error to curtail the cross-examination of the witness Wiley concerning his character in general and in not allowing him to be cross-examined as to his being bound over to the district court upon a charge for assault and attempt to murder. This witness admitted on cross-examination that he had been arrested at numerous times, and, in substance, that he had been arrested and bound over to the district court upon the same charge for which the defendants were being tried, and that he had not been informed against or tried for this charge. He also admitted that he had been arrested several times upon charges for larceny, and had but recently been arrested and was under bonds upon a similar charge. He also stated that he did not have any understanding with the district attorney's office that if he gave evidence in this case, all charges against him would be dismissed. He further stated that it was not a fact that he was telling this story with the understanding that he would not be prosecuted in this or any other case, and that he had no promises of any kind or character concerning immunity for this or any other crime. He was thereafter

asked, in substance, if he was not under arrest for an assault with intent to kill, and if he was not bound over by a justice of the peace in Victor on such charge, and if he was not at that time under bond to appear in the district court on the other charge; to which questions objections were sustained.

The defendants, later, as a part of their case, offered to prove by the records that the witness Wiley was, on the 20th of March, 1909, bound over to that court by a justice of the peace, from said county upon the charge of an assault with attempt to kill and murder, said to have taken place about March 20th, 1909, and that the district attorney had failed to file any information against him or in any manner further prosecute said charge; that the transcript of the justice was filed in the clerk's office on the 30th of March, 1909. Counsel for defendants then stated that this offer is made for the purpose of testing the credibility of the witness, Wiley, and to further show that there is an arrangement between the said Wiley and the district attorney not to prosecute on said charge. The court, on objection, excluded this offered proof.

Great latitude is allowable and should always be given in the cross-examination of a witness in his connection with the subject-matter being tried, and about which he is called to testify, as whether it is of a nature to awaken in him a lively and possible interest in the outcome of the trial; and, as a general rule, the party against whom the witness is produced has a right to show everything which may affect his credibility. This should include any evidence tending to show the witness is interested in procuring a conviction and as placing him in his real attitude towards the prisoner before the jury by which they could better judge his testimony, and it is proper to bring this out on cross-examination.—*Blenkiron v.*

*State* (Nebr.), 58 N. W. 587; *State v. Collins,* 33 Kan. 77; *Kellogg v. Nelson,* 5 Wis. 125; *State v. Krum,* 32 Kan. 372; *Lee v. State,* 21 Ohio State 151; 3 Ency. of Evid. 853.

We agree with counsel that where an accomplice testifies as a witness, a liberal and full cross-examination for the purpose of testing the truth of his statements should be permitted, and it is error to restrict such cross-examination within unreasonable limits, but we cannot concede there was any abuse of such discretion in this case. This witness, the accomplice Wiley, was subjected to a cross-examination of about 20,000 words, by counsel of experience and ability, in which they appear to have covered the entire field, including more than the average number of innuendoes upon all possible subjects permitted. But it is earnestly urged that both the questions asked and the record offered were competent for the purpose of testing the credibility of the witness. From an examination of many authorities on this subject, we find that the rule is not uniform and that there is a conflict upon the question; but we are of opinion that the great weight of authority is to the effect that, as a general rule, for the purpose of affecting the credibility of a witness, it is not proper to ask the witness on cross-examination if he has been arrested, informed against or imprisoned, prior to conviction for such offense.—*Caples v. State* (Okla.), 104 Pac. 493; *Keys v. U. S.* (Okla.), 103 Pac. 874; *Slater v. U. S.,* 1 Okla. Crim. Rep. 275; *Nelson v. State* (Okla.), 106 Pac. 647; *People v. Hamblin,* 68 Cal. 101; *State v. Bryant* (Minn.), 105 N. W. 974; *Eads v. State* (Wyo). 101 Pac. 946; *Leslie v. Commonwealth* (Ky.), 42 S. W. 1095; *State v. Huff,* 11 Nev. 17; *State v. Lamont* (S. D.), 120 N. W. 1104; *Parker v. Commonwealth* (Ky.), 51 S. W. 573; *People v. Crapo,* 76 N. Y. 288;

*Jackson et al. v. Osborn* (N. Y.), 2 Wend. 555; *People v. Cascone,* 185 N. Y. 317; *People v. Morrison,* 194 N. Y. 175; *Ryan v. People,* 79 N. Y. 593; *People v. Morrison,* 195 N. Y. 116; *Anderson v. State,* 34 Ark. 257; *Bates v. State,* 60 Ark. 450; *Glover v. U. S.,* 147 Fed. 426; *Miller v. Territory,* 149 Fed. 330; *State v. Wigger,* 196 Mo. 90; *People v. Casey,* 72 N. Y. 393; *People v. Irving,* 95 N. Y. 541; *Bissell v. Starr,* 32 Mich. 297; 1 Greenleaf on Evid. (16th ed.) 579-80.

The degree of credit which is to be given to the testimony of an accomplice is a matter exclusively for the jury, the same as any other witness. To a certain extent an accomplice goes upon the stand under a cloud; he admits his participation in a criminal offense; his testimony is, therefore, looked upon with suspicion and distrust, probably correctly so in a great many cases; but if every witness in a criminal case may be subjected to a cross-examination upon every incident of his past life, and every charge of vice or crime which may have been made against him, and which has no bearing upon the crime for which the defendant is being tried, his testimony may be so prejudiced in the minds of the jury as to prevent them from convicting upon evidence which otherwise would be deemed sufficient, and it is not legitimate to allow his entire testimony to be thus destroyed by mere probabilities based upon other accusations against him of which the law presumes him innocent until convicted. The same rule applies to a defendant himself, as well stated by the supreme court of Missouri, in the case of *State v. Wigger, supra.*

"* * * nothing is more common than for the court to instruct the jury that the indictment or information against the defendant is a mere formal

charge, and is no evidence of the guilt of the defendant of the charge therein contained, and no juror should permit himself to be in any way biased or prejudiced on account of the filing of the information against him.   *   *   *   This being so, how can it be logically or in good reason said that the mere filing of an information or indictment against a party, upon which no conviction has been had, ought to be admitted as affecting the credibility of such witness?''

Also, as stated by the supreme court of New York, in the case of *Ryan v. The People, supra:*

"*   *   *   on principle it seems equally incompetent when applied to any other witness.   An indicted person is presumed innocent, and yet the fact of an indictment is sought to impeach him as a witness.   We do not think it is a legitimate fact for that purpose.''

From the reasoning presented in the foregoing authorities, the conclusion must follow that the evidence in this case, which referred to an outside distinct offense, showing that a criminal charge was pending against the witness to affect his credibility, was properly excluded.

The second reason for which the record was offered was, namely, "to show that there is an arrangement between the said Wiley and the district attorney not to prosecute on said charge.'' This offered proof had no connection with the crime for which the defendant was being tried. The witness was allowed to answer all questions concerning this crime and his connection therewith, his arrest therefor, and his not being prosecuted; also concerning any hope or promise of immunity assured him by the district attorney or any one else, directly or indirectly. He was also compelled to testify as to other alleged crimes, for which he had been arrested,

similar to the one for which the defendants were being tried. All this was before the jury. From this condition of facts, we cannot concede that there was anything in this record, if admitted, which showed, or tended to show, an arrangement or intention upon behalf of the district attorney not to prosecute him upon this other charge; but if the fact could be deduced therefrom that he did not intend to prosecute the charge, it would not follow as tending to show the reason was, that the witness was giving evidence of the alleged crime for which the defendants were being tried. There may have been other reasons, namely, that in the judgment of the district attorney, the evidence was not sufficient to justify its prosecution; upon investigation the actions of the complaining witness might have been such that, in the opinion of the district attorney, the complaint was not made in good faith. Many other reasons may have existed outside of any promise of immunity why the case should not have been tried. Another fact may have existed, namely, that the case might not yet have been reached by the district attorney, and he may, in due season, have intended its prosecution, and so intended at the time.

It will be noted this offer pertains to an alleged crime having no bearing to the one under consideration. The witness was compelled to give answers to all questions pertaining to the crime, for which the defendants were being tried, and as to his thus far not having been informed against or prosecuted therefor; all matters in connection therewith were fully before the jury, and the cases cited by counsel for the defendants which hold that it was error to refuse the admission of such testimony concerning the crime for which the defendant is being tried, when offered for the purpose of showing the witness may have an expectation or hope of immunity from

prosecution because of his testifying, are not applicable to this case.

As a general rule, the limits of the cross-examination of a witness as to his past is a matter which rests largely within the sound discretion of the trial judge, and that discretion is to be exercised in view of all the circumstances.—Vol. 3, Ency. of Evid., 873. When these questions were asked and record proof offered, the witness had already been examined at length concerning his past history, numerous arrests, bind-overs, etc. In sustaining these objections, the court stated, "It occurs to the court * * * that I have given you a good big license, and you must not take too much advantage of it." Under the facts as shown here, it was not an abuse of discretion in refusing to allow the witness to further answer on cross-examination as to this outside charge or in refusing the record pertaining to it.

Complaint is made to the giving of certain instructions. No objections were made to them when given, nor in time to make any change before the jury retired. The case went to the jury on June the 8th; on June 9th verdicts were returned; on June 24th the motion for new trial was heard and overruled; July 27th a motion in arrest of judgment was overruled and the defendants sentenced; upon July 30th, counsel for defendants made application to have their objections and exceptions to instructions entered as if taken at the time they were given; this application was denied. It is not claimed that any objections were made in apt time, but affidavits are filed to the effect that it was the custom in that court to make objections and save exceptions to instructions after the jury had retired. It is stated in some of them that this system was well nigh universal, so much so that rarely was the record made upon the questions of giving and refusing instructions in any

other manner. This court has repeatedly held that objections to instructions are not a part of the record proper, and that unless such objections are made at or before the giving thereof, and saved and presented in the bill of exceptions, they will not be reviewed. This is the law; it is not a rule of court. If, when a case is being tried, counsel may sit idly by and allow improper instructions to be given without proper and specific objections thereto in time for the court to be aided thereby, they would be permitted to invite error. As stated in the case of *State v. Clough*, 70 Kan. 510, "They should not, however, lie in wait to catch the court in error for the purpose of obtaining reversals." The record discloses nothing concerning objections to the instructions until after judgment and sentence, when a motion was made to allow objections and exceptions to the instructions theretofore given, as if taken at the time given. This motion was overruled by the court, but no assignment of error is based thereon; therefore, the question as to the correctness of this ruling is not properly here for consideration.

Error is claimed in the manner the verdicts were signed by the foreman of the jury. When the jury was being impaneled, one of the jurors, who was accepted, answered under the name of Wm. H. Morris. Upon the return of the verdicts, it appears that this Mr. Morris had been elected as foreman of the jury and signed the verdicts "W. H. H. Morris, foreman." No objections were made at the time to the manner in which the verdicts were signed by the foreman, nor any exceptions taken. The question was raised for the first time upon motion for a new trial, when it was claimed that the verdicts were not signed by any member of the jury as foreman, and that the verdicts are a nullity for the reason that the records do not show the name of

"W. H. H. Morris" as appearing as a member of the jury. No attempt is made to show, nor is it claimed, that the Wm. H. Morris called into the box and who acted as a juror throughout the trial under the name of Morris, is not the same and identical person who acted as the foreman of the jury and signed the verdicts as "W. H. H. Morris." The defendants fail to show any injury they suffered by reason of the extra initial in the name. When the verdicts were rendered, had they desired and called the attention of the court to the fact, it would have undoubtedly had the juror make the corrections. But the defendants should not be allowed. to stand idly by until after the errors complained of could not be corrected. If anything had occurred in this respect prejudicial to the defendants, or in any way irregular, it could have been shown when the verdicts were returned and in time for their correction. Such matters, without any showing of injury to the defendants, do not constitute error.—Session Laws 1907, page 353; *State v. Duffield*, 49 W. Va. 274.

The judgment is affirmed. .        *Affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE MUSSER concur.